## RAMSAY v. RAMSAY.

[87 South. 491, No. 21673.]

1. APPEAL AND ERROR.  *Matters not affecting appellant's rights not considered.*

An assignment of error will not be considered, when the decision of the question it presents will have no effect upon the rights of the appellant.

2. DIVORCE.  *Chancery court may allow such alimony as is equitable and just with regard to circumstances.*

The power of a chancery court to award alimony to a wife in a divorce proceeding is measured by section 1673, Code of 1906 section 1415, Hemingway's Code), and is to make such allowance therefor as may seem equitable and just, having regard to the circumstances of the parties and the nature of the case.

3. DIVORCE.  *Alimony may be awarded wife, although husband without property.*

Alimony may be awarded the wife in a divorce proceeding, although the husband is without property and must support himself and pay the alimony out of his future earnings.

DIVORCE.  *Financial situation of parties should be considered.*

When the husband is without property and must support himself out of his own earnings, and the wife is able to and does earn something by her own labor, that fact should be taken into consideration in determining what amount the husband should contribute to her support, unless the prospective earnings of the husband are sufficient in amount to make it equitable and just for him to bear the whole burden of the wife's support.

5. DIVORCE.  *Husband's failure to pay alimony under decree prima-facie evidence of contempt.*

The failure of the husband to comply with the decree providing for the payment of alimony is prima-facie evidence of contempt, to purge which the burden is upon him to prove his inability to pay.

6. DIVORCE.  *Husband should not be committed, when he can pay alimony only of future earnings.*

A husband should not be committed to prison until he pays the

arrears of alimony allowed to the wife, when he has no property
and can pay the alimony only out of his future earnings.

7. DIVORCE. *Husband not in contempt for failure to obtain sureties,
    when he is unable to do so.*

Under section 1673, Code of 1906 (section 1415, Hemingway's
Code), the court may, "if need be, require sureties for the pay-
ment of the sum so allowed" to the wife as alimony; but, when
the giving of such sureties is ordered, the husband is not in
contempt until he fails to obey the order, and not then if his
failure to obey the order resulted solely from his inability to do
so.

8. DIVORCE. · *Court awarding alimony may fine husband for wilful
    failure to pay.*

The court which rendered a decree awarding alimony to the wife
may enter a fine against the husband for failure to pay the
alimony, when the failure to pay was wilful.

APPEAL from chancery court of Forrest county.
HON. D. M. WATKINS, Chancellor.

Bill by Cannie H. Ramsay against N. K. Ramsay for
divorce. Decree for plaintiff. From an order committing
defendant to jail for failure to pay alimony, he appeals.
Reversed and rendered.

*Robert L. Bullard,* for appellant.

The court below erred in overruling appellant's motion
to quash the information and citation; (2) It was error
to fine the appellant fifty dollars; (3) It was error to
commit appellant to jail for his failure to pay past due
alimony, and for his failure to give security for it, and
(4) It was error to decree against the appellant the pay-
ment of fifty dollars per month hereafter as permanent
alimony.

As the same legal principle underlies all three of the
first assignments above stated, for brevity they will be dis-
cussed together, that legal principle is stated as follows:
Before one may be imprisoned for his failure to comply
with a degree for payment of, or security for, alimony, it

must first appear that he was able to comply with the decree, and contemptuously refused to do so, when he had the means of complying.

Authority in support of this is abundant and without conflict.    I think, directly pertinent are the following: *Hamblin* v. *Hamblin,* 107 Miss. 113; *Mills* v. *The State,* 106 Miss. 131; *Edminson* v. *Ramsay,* 34 So. 455; *Webb* v. *Webb,* 37 So. 96; 13 Corpus Juris, 75, 76, 77.

The defendant should be discharged if the evidence leaves it doubtful as to his present ability to comply with the order.    Such being the law it is submitted that each act of the lower court was glaringly erroneous.    In the first place it was error to refuse to quash the information and citation.    3 Am. & Eng. Ency. Law 79; 13 Corpus Juris, pages 64, 65, 66, 67, 68.

But the evidence does not begin to show that it was ever humanly possible for him to have complied with the decree.    Search the record and if one bit of evidence can be found tending to show that Ramsay had the means of complying with the decree, then let the case be affirmed and let him go back to jail.    Appellee cannot point out any such evidence.    It is like the history of aphidians in Erin, "There aint none."

The fine of fifty dollars is something new under the sun. I cannot find law or precedent for it; no, nor any against it, for that matter, as it seems never to have been resorted to before.    I therefore pass it on to this court as something new.

(4)    It is now submitted that it was error to decree the payment of fifty dollars or any sum, against appellant as permanent alimony.    The whole question of alimony was before the court in this proceeding to be dealt with fully, and is therefore now before this court for review and correction, if the act of the lower court in decreeing alimony was erroneous.

In some jurisdictions nothing but property owned by the husband is considered in the allowance of alimony.    In others it is held that income from earnings may be con-

sidered. It seems to be an open question with this court, but our statute, section 1673, Code 1906, makes it the duty of the court to have regard to the circumstances of the parties. If this court adopts the reasoning of those which restrict consideration of the circumstances of the husband to his property nothing more is to be said. But can it be said that Ramsay has, or ever had, any income upon which any allowance could be based? For more than four years he was in the army. When he came out he had but ninety dollars and his personal effects. Since that time he is shown not to have been able to earn enough to live and keep out of debt. Where income is made the basis of the allowance, "It must be estimated at the amount of the previous year." 9 C. J. 225. Out of his earnings his debts and obligations should be deducted. 19 Corpus Juris, 256. It is also held that the court should take into consideration the fact that the husband, in order to earn what he gets, is compelled to live more expensively than the wife. *Louis* v. *Louis,* L. R., 1 P. & D. 230.

Will the court now approve such showing as Mrs. Ramsay makes as a basis for the allowance of permanent alimony? Counsel has much to say about the needs of the wife and the obligations of the husband. These things are always present. Her needs do not seem to be any greater than his. She married him four months and sixteen days before he was discharged from the army, on the 9th of December, 1918. All this was before her eyes. He was empty handed and she knew it. She had notice to begin with of all she now complains.

It is now submitted that he should be discharged from custody, that the decree appealed from should be reversed and a decree entered here denying permanent alimony, at lease until such time as she may hereafter be able to show that she is entitled to it on account of his ability to pay it.

*Currie & Currie,* for appellee.

We deem it proper to observe that in our opinion the record of this appeal necessarily presents two questions:

First, the question of the inherent power of a chancery court to compel and enforce obedience to its decree by compelling the execution of the bond required in the decree rendered in this hearing and committing the appellant herein to jail until such time as he should execute the bond or until the further order of the court.

Second, the separate question whether the chancery court has power to punish by fine or imprisonment the appellant herein for the contempt of the court, the court having decreed upon the hearing that the appellant herein had contemned the court and its valid orders and decrees by his failure, neglect and refusal to pay the alimony adjudged against him.

We assert that the first question herein stated is necessarily involved for the reason that the court on the rehearing did not nullify the original decree and enter a new one, but simply modified the original decree by reducing the penalty in the bond, and in the exercise of its inherent power to enforce and compel obedience to its decree, remanded the appellant herein to the custody of the sheriff of Forest county until such time as that he should execute the bond or until the further order of the court, this court bearing in mind that the petition of the appellant herein for his release from imprisonment thereunder, on a writ of *habeas corpus,* had just prior to the hearing in which this decree was rendered, been dismissed and the original decree under which he was originally imprisoned in default of such a bond remained in force and effect and was in full force and effect except to the extent to which it was modified by the decree in this case, that is, the penalty in the bond had been and was reduced to the amount of five hundred dollars and the other provisions of the decree authorizing the imprisonment remained unaltered or changed, and therefore the decision of this honorable court rendered on the 24th day of May, 1920, and reported in 84th Southern at page 455, was *res judicata* upon this question.

The decision of the court in this case was also *res judicata* upon the question of the ability of the appellant herein to give bond. The court in the syllabus of the case said: "Decree awarding alimony is conclusive as to defendant's ability to give bond."

In a *habeas corpus* proceeding to obtain his liberty the ability of relator to execute a bond in accordance with the decree of the chancery court awarding alimony was conclusively adjudicated in the decree for divorce and alimony."

The appellant herein can draw no aid from the original bill of complaint of the allegations therein, first, because the allegations are in the alternative; and second there was no appeal from the final decree in the original suit and the record of the proof made by the appellees herein in the trial of the original suit with reference to the ability of the appellant herein to pay the alimony adjudged against him and to execute the bond required of him to guarantee its payment is not before this court, and the conclusive presumption is that the chancery court of Forest county had before it ample proof to require and justify a decree requiring the execution of such a bond. *Edmonson, Sheriff,* v. *Ramsay,* 94 So. 455. The court will bear in mind that Ramsay, the appellant herein, had procured his temporary release from imprisonment under the original decree on the order rendered on his petition for the writ of *habeas corpus* and the natural and necessary effect of the reversal of that order by this court and the dismissal of the petition for the writ of *habeas corpus* was *ipso facto* to remand the appellant herein to the custody of the sheriff of Forrest county.

The court will observe that the chancery court did not undertake upon the hearing of the cross-petition of the appellant herein to render a new decree and did not render a new decree but merely modified the terms and conditions of the original decree, and in law the original decree stands the same today except to the extent and in the manner in which it was modified.

Upon the second question or proposition hereinabove stated, and to express the views thereon of our friend Judge BULLARD in his own language we quote the following from his brief: "The fine of fifty dollars is something new under the sun. I cannot find law or precedent for it; no, nor any against it, for that matter, as it seems never to have been resorted to before. I therefore pass it on to this court as something new."

The language of the decree against which the above quotation is directed is the following: "And after hearing and considering the same it is ordered, adjudged and decreed by the court that the said N. K. Ramsay is in contempt of court for his failure, neglect and refusal to comply with the terms and conditions of said decree so rendered on the said 26th day of September, 1919, in the case of *Mrs. Cannie Hartzog Ramsay* v. *N. K. Ramsay,* and for said contempt it is ordered, adjudged and decreed that the said N. K. Ramsay be and hereby is sentenced to pay a fine of fifty dollars."

Upon the facts which had been introduced in evidence before the court, and the court having all of the parties before it and having seen and observed the manner of the appellant herein and having weighed and considered all of the testimony solemnly adjudged the appellant to be in contempt of court and imposed this moderate fine, and counsel says without authority of law, which statement to us, and we believe to this court, is "stranger than fiction."

This court in its opinion in the Ramsay case, which counsel for the appellant must have read, cited the case of *Watson* v. *Williams,* 36 Miss. 331, in which this court in its opinion said:

"The power to fine and imprison for contempt, from the earliest history of jurisprudence had been regarded as a necessary incident and attribute of a court, without which it court no more exist than without a judge. It is a power inherent in all courts of record, and co-existing with them by the wise provisions of the common law. A court without the power effectual to protect itself against the as-

saults of the lawless, or to enforce its orders, judgments or decrees against the recusant parties before it, would be a disgrace to the legislature and a stigma upon the age which invented it." Why, a justice court in this country can fine and imprison a man for contempt.

In 1920, the legislature of the state of Mississippi enacted a chapter of law in this state the first section of which reads as follows: "Section 1. Be it enacted by the legislature of the state of Mississippi that any husband who shall, without just cause desert or wilfully neglect or refuse to provide for the support and maintenance of his wife in destitute or necessitous circumstances; or any perent who shall, without lawful excuse, desert or willfully neglect or refuse to provide for the support and maintenance of his or her child or children under the age of sixteen years in destitute or necessitous circumstances shall be guilty of a felony and, on conviction thereof, shall be punished by a fine not exceeding five hundred dollars or imprisoned in the penitentiary, not exceeding two years, or both, with or without hard labor, in the discretion of the court."

The court will observe that the legislature in the first part of this statute and speaking with reference to the wife, used the words: "without just cause," and in the second part of the statute speaking with reference to the child used the words "without lawful excuse." We ask that what lawful excuse does this record show for the desertion of his infant child by the appellant herein? What lawful excuse could there be for a man earning and spending upon himself each month the sum of one hundred fifty dollars to desert his child.

It is true that this statute did not go into effect until June first, 1920, and was not in effect at the time this case was tried, but it is in effect now and the record in this case shows that the appellant herein obtained this appeal with a *supersedeas* and that therefore he is still neglecting and deserting his infant child, and in passing upon the

merits of this appeal this court will properly take into consideration the provisions of this statute.

The court will observe, as we think we have, that counsel for the appellant herein, in the preparation of his brief and argument, carefully and cautiously neglected to mention or refer to this infant child and addressed all of his comments toward and his arguments against the mother, but we do not propose to allow the child to escape the notice of the court. The child is interested in this proceeding; it is a party to it. The decree adjudging alimony was for its support as well as its mother's. The bond required of the appellant herein was for its protection as well as its mother's.

In a case of this character this court will not take any notice of the motion to quash the citation and the suggestion upon any such technical grounds as are set out in the motion. The suggestion and the citation served its purpose in bringing the appellant herein before the court and in submitting to it the question tried and determined by it whether the appellant herein had contemned the court.

The court of its own motion could have sent out and brought him before it and laid down the charges against him and tried him upon them.

Can a man be permitted, to the exclusion and desertion of his child, to spend each month upon himself the sum of one hundred fifty dollars in living approximately that much in high priced hotels and restaurants and escape the just punishment of the law. At rock bottom this is the question in this case which the court in its decision must answer.

SMITH, C. J., delivered the opinion of the court.

The appellant and the appellee became husband and wife in December, 1918, and have one child. In September, 1919, the court below granted the appellee a divorce, awarded the custody of their child to her, and directed the appellant to pay the appellee permanent alimony in

monthly installments of seventy dollars each for the support of herself and their child, and required the appellant to execute a bond to secure the payment thereof in the sum of one thousand dollars. The appellant, in default of the execution of this bond, was committed to prison, and his fruitless effort to obtain a release therefrom in a *habeas corpus* proceeding will appear from the case of *Edmondson* v. *Ramsey,* 84 So. 455. The bond seems never to have been given, but the appellant was released from prison, and paid two and a part of the third of the appellee's monthly allowances.

In May, 1920, the appellee filed a petition in the court below, praying that the appellant be cited to appear and show why he should not be adjudged in contempt for failing to comply with the decree directing him to make the monthly payments to her. Though no order so to do appears in the record, the sheriff who served the citation on the appellant seems to have taken him into custody, for he required of him a bond to appear before the court and answer the appellee's complaint. On the return day of the citation the cause was continued at the request of the appellant to a later day before the chancellor in vacation, and the appellant was admitted to bail upon the execution of a bond therefor in the sum of one thousand dollars.

Complaint is made because of the requirement of these bail bonds, but we are not called on to determine whether or not they should have been required, for the reason that any question relative thereto has become of no value to the appellant, as he complied with the conditions thereof by appearing at the court when required thereby, and was afterwards taken into custody by the sheriff in obedience to the court's final decree, as will hereinafter appear ·

When the case came on for trial the appellant filed an answer to the appellee's petition, setting forth that his failure to comply with the decree of the court was caused by reason of the fact that he was wholly without the means so to do, and also prayed the court to modify its former decree "to the extent that he may be relieved from

sentence of imprisonment on account of giving security for the payment of said alimony, and that said dcree may be further modified by relieving him from the payment of alimony, at least until he is able to support himself."

It appears from the evidence that the appellant has no property, and must support himself and pay the appellee's alimony from his earnings. He is an automobile mechanic and salesman, and earned during a portion of the time since the rendition of the decree in the divorce proceedings the sum of one hundred and fifty dollars a month, but had earned nothing whatever for the last three months preceding his citation for contempt. He claims to have spent the money earned by him in necessary living and running expenses, but the only specific evidence relative thereto, other than that of the money paid to the appellee hereinbefore referred to, is that he lived most of the time in expensive hotels, for the reason, according to his own testimony, that he could not obtain more modest quarters. The appellant and the appellee are both able-bodied, and the appellee not only can work, but was earning at the time of the trial sixty-five dollars a month as a saleswoman in a department store. The appellant has made several bail bonds in this matter since the rendition of the divorce decree, one of which was made by a former army comrade, and another by his employer, and others procured by his attorney.

On this evidence the court below entered a decree adjudging the appellant guilty of contempt for failing to comply with the requirements of the decree rendered in the divorce proceeding, and entered a fine against him in the sum of fifty dollars, the payment of which was "suspended pending good behavior and the faithful performance by the said N. K. Ramsay of the terms and conditions of this decree hereinafter imposed upon him." The appellee's alimony was reduced from seventy dollars to fifty dollars a month, the bond required of the appellant was reduced from one thousand dollars to five hundred dollars, and he was directed to pay the appellee two hun-

dred and fifty dollars of the amount he was in arrears under the original decree, and was committed to jail until he should pay the two hundred and fifty dollars and execute the five hundred dollar bond. From this decree he appealed to this court.

The power of the court to award alimony to a wife in a divorce proceeding is measured by section 1673, Code of 1906 (Hemingway's Code, section 1415), and is to make such allowance therefor as may seem equitable and just, having regard to the circumstances of the parties and the nature of the case.

The circumstances surrounding the parties to this proceeding are that neither of them have any property and each is able to work, but that the appellant has no property and the appellee is able to earn something by her own labor will not release the appellant from the obligation, assumed by him when he entered the marital relation, to contribute to her support if her necessities so require, particularly in view of the fact that she is caring for his child. 19 C. J. 255; 2 Bishop on Marriage and Divorce (5th Ed.), section 446.

When the husband is without property and must support himself out of his own earnings, and the wife is able to and does earn something by her own labor, that fact should be taken into consideration in determining what amount the husband should contribute to her support, unless the prospective earnings of the husband are sufficient in amount to make it equitable and just for him to bear the whole burden of the wife's support. This, we presume, the court below did, and we cannot say that the allowance to the appellee of fifty dollars a month is excessive. The purpose sought to be accomplished by this proceeding is to coerce the appellant into complying with the decree awarding alimony to the appellee; the power so to do, if statutory authority therefor is necessary, being probably conferred upon the court below by section 560, Code of 1906 (Hemingway's Code, section 320), and cer-

tainly by section 999, Code of 1906 (Hemingway's Code, section 719).

The appellant's failure to comply with the decree directing him to pay alimony to the appellee placed him *prima facie* in contempt of court, and devolved on him the burden of proving his inability to make the payments directed, and had he failed to meet that burden the court below would have committed no error in committing him to jail until he complies with its decree. But that burden was fully met by him, for it appears from the evidence, without conflict, that he has no money at all and no means of obtaining any except by his own labor. This being true, he cannot pay the alimony or any part thereof until he earns the money necessary for that purpose, and, if he should be confined in prison, he will not while there be able, of course, to earn any money at all, so that to commit him to prison would defeat the purpose sought to be accomplished.

Under section 1673, Code of 1906 (Hemingway's Code, section 1415), the court may, "if need be, require sureties for the payment of the sum so allowed" to the wife as alimony, but when the giving of such sureties is ordered the husband is not in contempt until he fails to obey the order, and not then if his failure to obey the order resulted solely from his inability to do so. It is clear from the evidence that the appellant has been unable to give the bond required of him in the original decree and will be unable to give that required in the decree appealed from unless some friend should come to his relief and assume the obligation for him without security therefor, and such a friend he does not seem to possess. He should not have been committed to prison, either until he shall pay the arrears of alimony or give the bond required.

The appellant has a right to pay his necessary living expenses out of his earnings before paying anything on the decree awarding alimony to the appellee; but he must live economically, and whenever he has any money not then required for his living expenses, it is his duty to pay

it on the decree, and any failure so to do will be a contempt of court, punishable as such. In order to purge himself of contempt in not complying with the decree of the court, the appellant should not only have disclosed the full amount of money earned by him, but also have shown that it was consumed in paying his bare living expenses. In order to do this he must fully disclose for what the money earned by him was spent, and not only did he fail to do this, but it is apparent from the evidence that he made little, if any, attempt to save anything from his earnings, but, on the contrary, he seems to have lived in a style wholly unwarranted by his financial condition. Unless he has made an honest effort to pay the alimony awarded to the appellee he is in contempt, and, since it does not appear from the evidence that he made any such effort, the court below committed no error in imposing on him a fine of fifty dollars, for the court is not limited to imprisoning a person who disobeys its decree until he complies therewith, but may also fine him for having disobeyed the decree.

Since the appellant's financial condition is such that he cannot be imprisoned until he pays the arrears of the installments of alimony, or until he executes a bond so to do, the only way in which he can be coerced into paying the alimony is to hold over him the power to punish him for contempt when it shall be made to appear that he has not paid any of an installment of the alimony, but could have done so, had he so desired. Whether the court below was authorized to suspend the collection of the fine seems not to be objected to, and will not be determined.

For the error in committing the appellant to prison until he shall have paid the arrears of alimony and executed the bond required of him, the decree of the court below will be set aside, and a decree entered here in accordance with that rendered below, with the omission of the clause referred to.

*Reversed and remanded.*