Ex Parte Redmond.

(Division A.   Feb. 24, 1930.)

[126 So. 485.   No. 28044.]

See, also, 125 So. 833.

Powell, **Harper** & **Jiggitts**, of Jackson, for appellant.

**J. H. Price,** of Magnolia, and **Chas. M. Bryan,** of Memphis, Tenn., for appellant.

P. H. Eager, Jr., and Chalmers Potter, both of Jackson, for appellee.

Argued orally by **J. H. Price**, and **Robt. Powell**, for appellant and by **Chalmers Potter**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

In the chancery court of Hinds county, the appellant, S. D. Redmond, a negro lawyer, was adjudged to be in contempt of court, sentenced to pay a fine of one hundred dollars and to serve a term of thirty days in jail.

On February 2, 1929, the last day of the regular term of the chancery court, there was entered of record on the minutes of the court the following order of commitment:

"In Re S. D. Redmond.

"Order.

"Came on this day this cause to be heard, upon the motion that the respondent, S. D. Redmond, be adjudged guilty of a direct contempt of this court, and the matter being passed over until afternoon to give the respondent, S. D. Redmond, an opportunity to prove the charges set forth in his motion for a new trial, and the time for such hearing be fixed at three o'clock, the said Redmond did then and there fail, neglect and refuse to offer any evidence in support of his said motion, and the court having heard and considered said motion, to adjudge the respondent guilty of contempt, and the motion filed by the respondent for a new trial, and being of the opinion that the respondent, S. D. Redmond, was and is guilty of a direct contempt of this court and as punishment therefor, that he be fined in the sum of one hundred dollars and committed to the county jail for a period of thirty (30) days, the said Redmond being present in court throughout these proceedings; and it is further ordered, adjudged and decreed that the contemptuous motion for a new trial be and the same is hereby stricken

from the files, the court finding that Messrs. J. H. Thompson; J. O. S. Sanders, and W. H. Hughes, had nothing whatsoever to do, either directly or indirectly, and no knowledge of the preparation or intention of filing, or filing, of said contemptuous motion, to all of which action of the court, the respondent excepted. And the court submits said cause for such other or further orders, process or decrees in vacation as may be proper. Ordered, adjudged and decreed this February 2, 1929.''

Technically, the order constitutes the entire record of this contempt proceeding, but counsel for appellant have agreed with the committee—the lawyers prosecuting the case—that certain other matters may be made of record. It appears that on the 2d day of February, 1929, Redmond filed a motion for a new trial in a proceeding to disbar him pending in that court, and in which a judgment adverse to him had been theretofore rendered. It further appears that some time in the forenoon of that day Redmond had filed a paper which is denominated, ''A motion for a new trial in the disbarment proceedings.'' None of the facts surrounding the filing of this paper by Redmond appears in this record, nor is it shown whether he personally presented it to the court or not, or how it came to the attention of the court, whether filed by Redmond in person or by some other person. The paper itself shows that it was signed by Redmond pro se. At any rate, it appears aliunde this record that the presiding judge of that court became aware of the contents of this motion for a new trial and ordered the sheriff to incarcerate Redmond in jail. Before noon, Redmond filed the necessary appeal and appearance bond, and was, by the clerk, furnished with a certified copy of a decree committing him to jail for contempt, which decree was signed by the chancellor, but was never, in fact, entered on the minutes by the clerk. That afternoon, the presiding judge caused a telephone message to be delivered to Redmond notifying him that at three o'clock p. m. the court would take up his motion for a

new trial as to the truth or falsity of the allegations therein contained. Redmond filed a paper in which he stated that he had only forty minutes, and could not, in that time, get his witnesses; that he had been refused permission to introduce his witnesses, and had been threatened with a fine if he opened his mouth, and had been told by the chancellor that no proof was necessary; that he was unable to get counsel to represent him, and was afraid to go back to court to make a defense.

Thereupon the court entered the decree which we have set forth above.

On February 4, 1929, after the regular term of court had adjourned, a notice was served on Redmond that, on February 6th, the chancellor would take up for hearing the truth or falsity of his motion for a new trial. Redmond again declined in writing to go to court, stating that his contempt proceedings had already been appealed to the supreme court; he filed the affidavits of seven witnesses tending to show political bias on the part of the judge in rendering the opinion, and purporting to quote the chancellor literally., The chancellor heard some witnesses, and entered an order that the charges preferred in the motion for a new trial were false, and reaffirmed the contempt decree entered in term time.

In so far as the decree of commitment to jail for contempt is concerned, entered in vacation, we have to say that the court was without power to hear this matter in vacation, and we shall not advert further to proceedings and decree in vacation. See Sagory v. Bayless, 13 Smedes & M. 153; Shirley v. Conway, 44 Miss. 434; Beard v. McLain, 117 Miss. 316, 78 So. 184; Carter v. Kimbrough, 122 Miss. 543, 84 So. 251; and Callicott v. Horn, 137 Miss. 693, 102 So. 850.

The decree which was certified by the clerk as signed by the chancellor in the forenoon at the time Redmond was sent to jail and not entered on the record of the court was superseded by the decree actually entered before

court adjourned on that day, so that the decree above set forth constitutes the basis of this appeal.

This general and broad statement may be made with reference to all the decrees entered by the court—that none of them show the contemptuous matter upon which the court based its judgment declaring the appellant guilty of contempt.

Counsel for the appellant relied upon three major propositions for reversal of this case; (1) That, if the motion for a new trial in the disbarment proceedings be taken as a basis of the judgment of the court in the instant case, the matter therein contained is not contemptuous; (2) that the court erred in holding that Redmond was guilty of direct contempt in any event, and that it is not shown to be direct contempt, but, if any at all, is a constructive contempt; and (3) that, if the language be held to be contemptuous, and if the paper filed in court containing the language mentioned be adjudged to be a direct contempt, the judgment is wholly insufficient to sustain a conviction, because no contemptuous matter is set forth in said judgment ordering Redmond to be committed to jail for contempt.

On the first proposition, the motion for a new trial, in specific terms, charged that the presiding judge of that court had not been fair and impartial, and charged the presiding judge with political bias and prejudice against him because he was of the Negro Race, and asked the judge of the court to grant a new trial and recuse himself in order that appellant might have a "fair and competent judge."

We call attention to the fact that none of the attendant facts or circumstances of the filing of this motion appear in this record: no explanation of the facts of which the court was cognizant, nor of Redmond's excuse therefor. But the tenor of the document tended to embarrass the presiding judge in the administration of justice to charge him with incompetency, partiality, bias, and racial prejudice, and the object of the motion was evidently to se-

cure a new trial before a different judge. In the case of Cashin v. Murphy, 138 Miss. 853, 103 So. 787, we distinctly held that the interest which would serve to require a presiding judge to recuse himself must be that interest set forth in the statute and Constitution, to-wit, relationship or financial interest. On the face of this paper, without any glimpse of the attendant circumstances, we are constrained to say, in the absence of any explanation, that the language was contemptuous. Section 751, Hemingway's 1927 Code (section 995, Code of 1906), sets forth the only ground for disqualification of a judge to preside in a cause in this state. In 13 C. J., par. 42, at page 32, it is said that:

"Filing affidavits for change of judges, or of venue, charging bias and prejudice of the judge is also punishable as contempt, unless the statute allows change on that ground, and then only when the allegation is made in respectful language and in a respectful manner; but the rule is otherwise if the affidavits are falsely, willfully and maliciously made."

Second. It is urged upon us that the court erred in proceeding as for a direct contempt; that, if it was a contempt at all, it was constructive.

The court in its decree denominated the acts, whatever they were, which were condemned by the court, as constituting a direct contempt. This record does not show whether the appellant filed a contemptuous paper, or uttered contemptuous language, or performed contemptuous deeds "in the face of the court." We have no ray of light upon when, how, and where the contempt condemned by the court was committed. In the cases of Neeley v. State, 98 Miss. 816, 54 So. 315, 33 L. R. A. (N. S.) 138, Ann. Cas. 1913B, 281, and Grace v. State, 108 Miss. 767, 67 So. 212, this court has definitely defined direct and constructive contempt, unnecessary for us to repeat here. We pretermit any decision, or intimation of decision, as to whether a direct or a constructive contempt was committed by the appellant. It is clear that

the procedure provided for and outlined in Grace v. State, supra, was not followed in this case, and that the court below did not view whatever happened as a constructive contempt.

Third. It is next insisted that the judgment, if for direct contempt, must show the grounds relied upon, and upon which the chancellor made his order committing the appellant to jail for contempt.

The only fact stated is that there was a motion for a new trial, which motion was not made a part of the decree, nor identified in any manner whatever. For aught we know, Redmond may have filed forty motions for a new trial. No contemptuous language or contemptuous act is hinted at in the order of commitment.

Section 755, Hemingway's 1927 Code (section 999, Code of 1906), authorizes the supreme, circuit, or chancery courts to fine and imprison those guilty of contempt while such courts are sitting, and is authority for the chancery court in proper cases to convict and punish for contempt. Section 14, Hemingway's 1927 Code (section 39, Code of 1906), confers the right of appeal upon any person convicted of contempt to the supreme court, and the following applicable language is found therein:

"And the sentence or decree or order of the court below may be affirmed, reversed, annulled, or modified, according to the judgment of the appellate court. All such appeals shall be tried on the record, and the presiding officers of all tribunals condemning any person for contempt shall, within one day thereafter, sign bills of exception, if demanded, showing all the facts and evidence upon which such judgment was predicated."

The decree which was never signed by the chancellor in the forenoon shows that Redmond objected to the action of the court and asked for a bill of exceptions, that he excepted to the decree, but his request for a bill of exceptions was refused. The judgment rendered in the

afternoon recites that Redmond was present in court, but omits any reference to his request for a bill of exceptions, and also omits that exceptions to the action of the court were taken. It is agreed by counsel that Redmond was not present in court when the judgment was rendered in the afternoon.

Where a judgment is entered for contempt committed in the presence of the court, if the court does not set forth in his judgment of conviction the facts upon which he bases his contempt decree, of what use would be an appeal to another court? The language of the statute granting appeals in our state presupposes, first, that the court will put in his order of commitment the substantial acts of those adjudged by the court to be in contempt, and, in the light of this statute, and the many authorities in other jurisdictions, a judgment which does not contain a recital of the matters showing the contempt is either absolutely void or voidable. A warrant of commitment could not be broader than the judgment upon which it is based, and, if the bare, naked judgment which we have set forth was all the appellate court had to consider, and if no contemptuous matter was set forth therein, this court could only affirm the judgment as presented to it.

The object of section 14, Hemingway's 1927 Code, set forth above, is that the appellate court may see what the facts were of which the court took cognizance and adjudged an appellant guilty of contempt. It is not enough to say that it referred to a motion for a new trial without even stating the cause in which it was filed, or the language which it contained, which the court regarded as an insult to the law, and as tending to embarrass and impede the administration of justice, as a sufficient basis upon which to incarcerate an appellant in jail.

In this case, where we do not know even where the court took cognizance of the paper presented here, we

can only say that the better course is for the judge to let the alleged contemnor have a record of the proceedings contained in the judgment itself, and, while the hearing is summary, and may rest entirely upon the knowledge of the court, that knowledge should be reflected in the judgment, so that it may be known by those whose duty it is to review it. What the court knew, how it knew it, and the material attendant circumstances when presented, so that the court may act upon what it knows, is well, but it is far better to permit the alleged contemnor to make his statement and reserve his exceptions, as is warranted by the statute permitting an appeal. The judgment should be clear enough, and explicit enough, to constitute res adjudicata. It should be clear and explicit enough to warrant an appellate court in affirming, reversing, annulling, or modifying it. In effect, this judgment only recites that the court finds that Redmond is guilty of contempt; when or how is entirely left to conjecture and speculation.

We think our statute sufficiently demonstrates that the judgment entered in the court below cannot be maintained. But authorities are not wanting to sustain this proposition. See 6 R. C. L., p. 536, section 49; Grace v. State, 108 Miss. 767, 67 So. 212; Hoffman v. Hoffman, 26 S. D. 34, 127 N. W. 478, 30 L. R. A. (N. S.) 564, Ann. Cas. 1913A, 956; Ex parte Creasy, 243 Mo. 679, 148 S. W. 914, 41 L. R. A. (N. S.) 478; State v. District Court, etc., 58 Mont. 276, 191 P. 772; and Lapique v. Superior Court of Los Angeles County, 68 Cal. App. 407, 229 P. 1010; Ex parte Wright, 65 Ind. 504; and In re Terry, 128 U. S. 289, 9 S. Ct. 77, 32 L. Ed. 405.

In a direct contempt, one committed in the face of the court, the judgment of conviction should contain the material facts known to the court constituting the contempt. In Grace's case, supra, this court expressly approved the rule we are here announcing in words quoted from the case of Ex parte Wright, 65 Ind. 504:

"For a direct contempt the offender may be punished instantly by arrest and fine or imprisonment, upon no farther proof or examination than what is known to the judges by their senses of seeing, hearing, etc.; *but, in rendering the judgment and making up the record, the causes of such contempt should be stated.*" (Italics ours.)

In the case before us we have a mere recital that a motion for a new trial had been filed by Redmond. It is not contempt of court to file a motion for a new trial. The judgment in this case does not appear as a part of the record of another case pending before the court.

In re Terry, 128 U. S. 289, 9 S. Ct. 77, 32 L. Ed. 405, there is set forth a judgment rendered in the circuit court of the United States for the Northern district of California—a judgment in direct contempt proceedings, the court being presided over by Hon. STEPHEN J. FIELD —in which the acts of David Terry, adjudged by that court to be a direct contempt, were set forth and later approved by the Supreme Court of the United States. We call attention to it as persuasive of the view adopted by that court of what the judgment should contain. This view is accentuated by the fact that our statute grants the right of direct appeal to this court from a judgment in contempt proceedings from the chancery court. It is further accentuated by the fact that this court is given the power, not only to affirm the judgment but to modify, annul, or reverse the judgment. If we required no statement of facts adjudged to be contemptuous by the lower court, there would be no opportunity for us to either modify, annul, or reverse the judgment, and an appeal, if the judgment in the instant case should be approved, would be a vain and idle procedure.

We will add further that, while the proceeding is a summary one, and the judge may act upon that which he personally knows is a direct contempt, yet even in that proceeding the alleged contemnor is allowed his day in

court, and in fairness should be permitted to make his statement and apology and state courteously his views, in order that he may have them incorporated in his bill of exceptions granted to him under the statute. Under the common law, a contemnor could entirely purge himself of his direct contempt; that rule does not now obtain, but, if a lawyer, in the heat of debate, or in zeal for his client, oversteps the bounds of courtesy and dignity, and offers an insult to the majesty of the law, as represented by the court, his contrition and apology in most cases should ameliorate the offense in a way, and the punishment should not be so severe upon a repentant offender as would be meted out to one who stubbornly put the courts of the land in contempt and heaped upon them indignities. This does not at all prevent the presiding judge of the court from acting summarily upon what he knows, sees, or hears, nor do we intend that anything we have said here shall prevent a lawyer from properly representing his client bravely, decently, courteously, and manfully in our courts; and the judge is required in this exigency not only to possess knowledge of the law, but that other faculty of courteous, calm, dignified temperament of mind that he may rightfully demand of all who come within its portals courtesy and respect.

In the light of this meager record, while we have determined that the judgment on its face is insufficient to sustain a conviction for contempt of court, yet we have determined that it is better that we remand this case to the lower court to the end that the court below may, upon proper proceedings, determine whether or not a direct or constructive contempt is involved here, and, if either is ascertained, that it may dispose thereof. This is but fair to the appellant and to the trial court.

Reversed and remanded.