BRANNON *v.* STATE.

(Division B.   April 7, 1947.)

[29 So. (2d) 916.   No. 36409.]

**H. V. Watkins** and **Wm. A. Bacon**, both of Jackson, and **Ben Wilkes**, of Greenville, for appellant.

**Greek L. Rice**, Attorney General, by **Geo. H. Ethridge**, Assistant Attorney General, for appellee.

Argued orally by **Wm. A. Bacon**, for appellant, and by **Geo. H. Ethridge**, for appellee.

**L. A. Smith, Sr., J.**, delivered the opinion of the court.

The Circuit Court of Holmes County was in regular session and engaged upon the trial of the case of the State of Mississippi v. W. J. Dodd et al , in which case a group of men were being prosecuted for the slaying of one McAtee. The judge had instructed that all of the witnesses be retired from the courtroom; those for the State to be taken to one room; and those for the defendant to another room; and the witnesses were told not to talk to anyone except their lawyers. The rule had been invoked.

The appellant, a newspaper woman, owned and published two local newspapers in Holmes County; was special correspondent for two press associations of national scope; and local correspondent of the Commercial Appeal, a popular Southern metropolitan daily and Sunday newspaper of Memphis, Tennessee. She was not

present when the trial judge issued the above instructions, but, having received a telegraphic query from the Commercial Appeal, she entered the courtroom in order to report the case being tried. Henrietta McAtee, the widow of the slain man, was testifying. Appellant took notes of her testimony as it was delivered, and after the witness left the stand, and was on the way downstairs to the witness room to which she had been assigned, appellant followed her for the purpose of checking the correctness of one point in her notes. A deputy sheriff, accompanying the witness, intervening to prevent appellant from talking to the McAtee woman. This was the State's case. The deputy testified:

"Q. What did you do? A. I went and told Henrietta: 'I told you to go in the Sheriff's office,' and I told Miss Hazel—I didn't call her name; 'You can't talk to the witness by order of the court.'

"Did you tell her that was the court's instructions? A. I told Henrietta to go on in the sheriff's office and Miss Hazel said: 'You haven't got her under arrest, she is a free woman and you and the sheriff and nobody else can keep me from talking to her,' and I told the Negro woman to go on in the sheriff's office, and Miss Hazel said: 'I am going to talk to her,' and I come back up to the courtroom and reported it to the judge and the sheriff."

Henrietta McAtee at once went on back into the sheriff's office, whence she was later recalled for direct examination as a witness by the State. Appellant immediately left the scene. The appellant gave this account of the encounter between her and the deputy: "I said: 'How come she can't talk to me? She is not under arrest and I reckon she can talk to anybody she wants to,' and he shook his head. He shook his head and said: 'I am just telling you what Walter said.' " ("Walter" was Mr. Murtagh, the sheriff). In answer to a question about what she did when the deputy walked away, appellant replied: "There was really only one question that wasn't

clear. I had already asked her that when Mr. Nabors came up. After he walked away, I returned to my office and I turned to Henrietta and said: 'Keep your chin up.' " There is no contradiction of this testimony of appellant, by anyone. In the meantime, court was proceeding with the trial upstairs, without hindrance, so far as disclosed by the record.

However, the deputy made his report, and the district attorney filed a sworn Information of Criminal Contempt, based on the above incident, which charged "That all of the above stated was then and there done by the said Miss Hazel Brannon in an attempt to embarrass said court in the performance of its duties and to hinder and impair the orderly progress and function of the said trial, and is an act denounced by the Laws of the State of Mississippi and was and is an expression of contempt of this Honorable Court."

To this information, appellant filed a sworn and categorical denial of the above charges, setting out her side of the events, and stated among other things: "The defendant, on the contrary, alleges that her actions at the time in question were motivated by nothing except a desire to secure a check of the statements of a witness," and further that "she did not intend any violation of any rule of the court, nor did she intend to embarrass, humiliate, hinder or delay any officer of the court in the performance of any duty. The defendant further states that she enters an apology to the court for any action which she may have taken which in the eyes of the court appears to be a contempt."

It will be borne in mind that appellant was not in the courtroom when the court separated and instructed the witnesses, and that she had no further conversation with the witness, Henrietta McAtee, after having been admonished by the deputy, except to say to the widow of the slain man, "Keep your chin up."

At the ancient common law, the filing of a sworn disclaimer of the acts specified in the Information of Con-

tempt, together with an answer and apology under oath, prohibited the court from hearing other proof on the subject. The Attorney General correctly argues, however, that ''the practice in this State does not accord with the ancient common law rule that a person might discharge himself of contempt committed in the absence of the court or out of the presence of the court by making answer under oath.'' O'Flynn v. State, 89 Miss. 850, 43 So. 82, 9 L. R. A. (N. S.) 1119; 119 Am. St. Rep. 727, 11 Ann. Cas. 530. Contrition and apology now suffice merely to ameliorate the offense, and to mitigate the punishment. Ex parte Redmond, 156 Miss. 582, 126 So. 485. So, the court properly heard the witnesses on both sides of the controversy, eliciting the foregoing excerpts therefrom.

At the end of this hearing, appellant was found guilty by the trial judge, and the following final judgment was entered: ''This cause having come on this day to be heard and the court having heard all the evidence offered by both the State of Mississippi and the Defendant in this cause doth hereby find the Defendant Hazel Brannon' guilty of contempt of the Circuit Court of Holmes County, Mississippi, and does hereby sentence the said Defendant to pay a fine of fifty dollars ($50.00) and serve a term of fifteen days in the Holmes County Jail. Said sentence is however hereby suspended conditioned on the Defendant not violating any of the laws of the State of Mississippi, The United States of America, any municipality of the State of Mississippi, and any rule of the Circuit Court of Holmes County, for the period of the next two years.''

It must be noted that this judgment merely found appellant guilty of contempt. It did not recite the substantial acts or the detailed events constituting the contempt. We point this out at this time for the reason that, upon adjudging appellant guilty, the court administered a reprimand, containing statements from which it might be inferred that she was convicted of direct contempt on account of things said or done in the presence of the

judge, although she was on trial for constructive contempt only. The trial judge said: "The Court is of the opinion that you are guilty as charged. I sympathize with you and am sorry you got in this mess, but you brought it on yourself. I realize you are putting on a great campaign for law and order but if you read history you will see that the only perfect being didn't make much of a hit with his reform. He reformed a few and left this advice 'Before you clean up someone else clean up yourself' so few of us pure are left. I have been around a long time and know the job, it is to clean up Holmes County. I don't believe you can do it. I am of the opinion that when Gabriel blows his horn and rolls back the scroll of Heaven he will find the world like it is today. I am sorry that this is the situation. I get no pleasure out of sentencing you. I wish you had stayed out of this mess. It reminds me of what the Irishman said when he saw the bull run head-on into the train. 'I admire your spunk but doubt your judgment.' You have run head-on to this Court. When called up you proceeded to give the Court a curt lecture as to his duties."

"The freedom of the press" is no idle and meaningless term. It signifies a course of statecraft deeply engrafted in our government policy, as well as our jurisprudence. "The dignity of the court" is not an idle and meaningless phrase, either. It proclaims a demand, to all dealing with courts, for proper respect and obedience. The courts interpret and enforce the laws of the State—that is to say, the people. The function of the press is to keep these people informed of matters of public interest, even of the administration of the courts. However, the press has not an unqualified right to learn and publish all information about every judicial function—the secrets of the grand jury, to name one, for instance, must not be revealed for a period of time On the other hand, ordinarily the court has no right generally to deny to the press opportunity to learn, and the right to publish, the legitimate facts of trials during the public progress thereof.

Accuracy of this information is important, and the dissemination of it correctly is salutary, in the public interest. Courts should, therefore, permit representatives of the press reasonable means of getting the correct news, which privilege the press should exercise with all due care in order not to impede the processes of judicature, and the administration of the business of courts. Courts are clothed by law with power to punish offenders who deliberately impede the progress of the judicial function, for contempt, and who fail to exercise such due care.

As stated, supra, this charge against appellant was one for constructive contempt and to sustain constructive contempt the law challenges the State to prove it beyond a reasonable doubt and clothes the prisoner with a presumption of innocence until that is done. "In a proceeding for contempt . . . [the defendant] is entitled to be informed by the petition, motion, or information by which the proceeding was begun of the nature and cause of the accusation, cannot be compelled to testify against himself, and should be presumed innocent until proved guilty beyond a reasonable doubt." Ramsay v. Ramsay, 125 Miss. 715, 88 So. 280; sustaining suggestion of error, 125 Miss. 185, 87 So. 491, 14 L. R. A. 712. This Court also said, in Grace v. State, 108 Miss. 767, 67 So. 212, "In constructive contempt there must be a proper foundation laid before process issues, and the application or foundation of contempt must contain a statement of that which constitutes the contempt." Constructive contempt is any act done which tends to impede, degrade, obstruct, embarrass, interrupt, defeat or corrupt the administration of justice when the act is done beyond the presence of the court. 13 C. J., Contempt, p. 5; 17 C. J. S., Contempt, Sec. 4, p. 6; Sullens v. State, 191 Miss. 856, 4 So. (2d) 356; Brewer v. State, 176 Miss. 803, 170 So. 540. In determining the contemptuous character of the acts presumptions favor the accused, and the burden of showing their contemptuousness is upon the prosecution. 17 C. J. S., Contempt, Sec. 84(b), p. 110.

On the contrary, direct contempt is committed in the presence of the judge and does not require formal written "Information of Contempt," but a judgment of guilt thereof must set out specifically the substantial acts of direct contempt, for which accused was convicted. "The judgment should be clear enough, and explicit enough, to constitute res adjudicata. It should be clear and explicit enough to warrant an appellate court in affirming, reversing, annulling, or modifying it." And furthermore: "The language of the statute granting appeals in our state presupposes, first, that the court will put in his order of commitment the substantial acts of those adjudged by the court to be in contempt, and, in the light of this statute, and the many authorities in other jurisdictions, a judgment which does not contain a recital of the matters showing the contempt is either absolutely void or voidable." Ex parte Redmond, 156 Miss. 582, 126 So. 485, 488. There, we were discussing the order of a court dealing was direct contempt.

The statute on appeals from convictions of contempt, Sec. 1152, Code 1942, directs that we shall decide if there were contempt. The statute under which the court below imposed the punishment on appellant is Sec. 1656, Code 1942. The charge on which she was tried was her alleged "attempt to embarrass said court in the performance of its duties and to hinder and impair the orderly progress and function of the said trial, and is an act denounced by the Laws of the State of Mississippi and was and is an expression of contempt of this Honorable Court." We cannot find any justification of this conviction against appellant from the evidence. It is certainly insufficient to overcome the presumptions in her favor against contemptuousness, or to convict beyond a reasonable doubt. Here, we find a condition paralleling the case of Knox v. State, 160 Miss. 494, 135 So. 206, 208, where we said: ". . . with no more than that, if held to constitute a criminal contempt, must be shown to be calculated to impede, embarrass, obstruct, defeat, or

corrupt the administration of justice, the duty devolves upon us, if we should hold in the affirmative, to point out, upon a real and substantial basis of sound and practical judicial reason, in what material respect the act produces the corrupt effect charged—in what material respect as distinguished from that which is merely technical or else is only illusory. We find ourselves unable, upon the substantial basis mentioned, to point out, under the facts in this case, the requisite corrupt element. On the contrary, so far as we can see, the act, so far as it went in this case, or was intended to go, embraces nothing which in substantial effect would impede justice, or would obstruct, defeat, or corrupt the administration thereof.''

So, the conviction of appellant of constructive contempt, for which she was tried, cannot be sustained, because there was wholly insufficient proof to sustain it. If the conviction was for direct contempt, which was not the charge expressly revealed in the record, and which would be a total departure from the accusation filed and proof adduced in the record, and have its only suggestion in possible inferences from the judge's oral statements to appellant at the time of the announcement of his decision, the order of the court was invalid, since it did not ''contain a recital of the matters showing the contempt.''

Therefore, the judgment of the trial court is reversed and the appellant discharged.

Reversed and appellant discharged.