ROCHELLE *v.* STATE.

No. 39303          November 1, 1954          75 So. 2d 268

84

*John B. Farese,* Ashland, for appellant.

*Wm. E. Cresswell,* Asst. Atty. Gen., Jackson, for appellee.

ETHRIDGE, J.

The Chancery Court of Marshall County adjudged appellant, Roy Rochelle, guilty of contempt of court by the violation of the court's decree enjoining him from the sale of intoxicating liquor on certain property, and he was fined $1,000 and sentenced to serve a term of six months in the county jail. On this appeal appellant argues (1) that the injunctive decree, which he was convicted of having violated, did not enjoin him generally from the sale of intoxicating liquor in the state, as is authorized by Code of 1942, Sec. 2646, but only enjoined him from selling liquor on certain described premises, and (2) that the evidence fails to show that he violated the injunction which is directed solely to the named property. We think that the appellant is correct in these contentions.

On March 27, 1952, upon the petition of the district attorney and the county attorney of Marshall County,. the chancellor executed an order granting a temporary injunction without notice against appellant, Roy Rochelle, and Mrs. Grady Smith, adjudging that the described property owned by Mrs. Smith is a nuisance and enjoining defendant from violation of the intoxicating liquor statutes of the state. The order and the writ of injunction do not describe the property by metes and bounds, but refer to it as a small tract of land lying on the east side of Mississippi Highway No. 7, and about 8-10 of a mile north of Holly Springs, and 2-10 of a mile north of where the highway crosses the overpass on the Frisco Railroad, there being on this small tract of land a "white asbestos one-room dwelling . . . the said store building being commonly known as Roy's Place or Rochelle's Place." The temporary writ of injunction based on the temporary order of March 27 was served on appellant and Mrs. Smith, but it is more restrictive than the order, and, although ambiguous, appears to be limited to violations on the premises. At the

May 1952 term, upon motion of the district and county attorneys, appellant and Mrs. Smith having made no answer to the bill, a final decree was executed by the chancery court on May 14, 1952. It was entitled "Decree making injunction perpetual." However, it did not attempt to make the temporary injunction perpetual by merely referring to the same, but adjudicated fully the facts, and then adjudged that the described premises were a nuisance and abated the same under Code Section 2646. The final decree then provided: "these defendants, their agents, employees, grantees, lessees, mortgagees and privity in contract are hereby perpetually enjoined and restrained from the operation of said premises as such nuisance and perpetually enjoined and restrained from the sale, storing, or possession of intoxicating liquors on said premises."

■■ It will be noted that this final decree of May 14, 1952, which appellant was convicted of having violated, enjoined appellant from the sale of intoxicating liquors "on said premises," but did not enjoin him generally from sales anywhere within the state. The State argues that the order for temporary injunction and the writ of injunction based thereon were still in full force and effect when appellant sold the liquor as hereinafter stated, and that the final decree of May 14, 1952, did not supersede the interlocutory order. An interlocutory injunction pertains to procedure, and a final or permanent injunction is largely a matter of substantive law. The true object and purpose of an interlocutory injunction is to hold and preserve in status quo the subject matter upon which the decree is to operate until the court is able to finally adjudicate the rights and duties of the parties. Griffith Miss. Chancery Practice (2d ed. 1950), Sec. 442, 443. 28 Am. Jur., ■■ Injunctions, Sec. 272, states the general rule as follows: "When the final decree is granted, the provisions of the temporary injunction are merged in it or dissolved thereby,

and no formal order of dissolution is necessary to the validity and effectiveness of the decree.'' ▆▆▆ 48 C. J. S., Intoxicating Liquors, Sec. 418, p. 693, says that the rules applicable to injunctions generally are applicable to injunctions issued under liquor statutes and ''a temporary injunction can operate only until the conclusion of the trial.''

▆▆ In accord with these principles, we think that the temporary order of March 27, 1952, and the writ of injunction based thereon, were dissolved by the final decree of May 14, 1952; and that this final decree superseded the temporary injunction and constituted the definition of the duties appellant was required to discharge. Moreover, the writ served upon appellant in pursuance of the temporary order is ambiguous and apparently is restricted to violations on the property. At any rate, the final decree restricted the temporary mandates and constituted the decree which appellant was obligated to obey.

▆▆▆ This final decree of May 14 enjoined appellant only from the sale of intoxicating liquor on the premises described in it. It did not enjoin him from the sale of intoxicating liquor generally in the state. Hence the next issue is whether there is sufficient evidence to support the finding of the chancery court that appellant sold liquor on the enjoined premises.

The appellant offered no evidence. The State introduced three witnesses. Two of them, Smith and Owens, were deputy sheriffs from the adjoining Union County. They testified that on September 5, 1953, they purchased a half pint bottle of whiskey from Roy Rochelle. Highway 7 north of Holly Springs, where it crosses the Frisco Railroad over a bridge, runs approximately north and south. Smith said that they purchased the whiskey from appellant at the first house on the right, north of the overpass; that he knew where Roy lived, the purchase was not at his place, it was made at Ralph

Rochelle's house, and that the building was a grey asbestos dwelling. Owens testified that he and Smith went together on that occasion and bought the whiskey; that the building from which Roy sold it was a three-room dwelling house with grey asbestos shingles; that he was told that it was Ralph Rochelle's house, although when they drove up they asked a lady if the man of the house was there, she called Roy and Roy appeared. The description of the enjoined property in the final decree of May 14, 1952, described, as stated above, the property as a small tract on which was a one-room dwelling with white asbestos shingles "being commonly known as Roy's place or Rochelle's place," and referred to the one-room building as a "store building." The evidence indicates that this one-room store building was located several hundred feet north of the Ralph Rochelle three-room house, which latter structure was the first building to the right beyond the overpass.

■■ Wall Doxey, Jr., county attorney, testified. Although on direct examination he stated that the "premises" from which the whiskey was purchased were under injunction of the court, the cross-examination revealed that the reason for this answer was that Mrs. Smith owned the land on which both the Ralph Rochelle house and the Roy Rochelle one-room store building, to the north of Ralph's house, were located. He testified that the two buildings were on two different, separate and distinct parcels of land; that the descriptions of the two places were separate descriptions, although they were owned by the same person, Mr. Smith; that "the surrounding area", apparently referring to the Ralph Rochelle house, was owned by the same person, Mrs. Smith. Nevertheless, the witness admitted that the store building to the north thereof were on separate tracts of land with separate descriptions, and are not overlapping. In view of the foregoing testimony, we think that the evidence clearly showed that the sale of whiskey in question took place at Ralph Rochelle's

home, and not on the premises described in the injunction prohibiting appellant Roy Rochelle from the sale of intoxicating liquor on definitely described premises.

██ In a proceeding for criminal contempt, the defendant is presumed innocent until proved guilty beyond a reasonable doubt. Ramsay v. Ramsay, 125 Miss. 715, 88 So. 280, sustaining suggestion of error in 125 Miss. 185, 87 So. 491 (1921); Brannon v. State, 202 Miss. 571, 583, 29 So. 2d 916 (1947). ██ The State's proof not only failed to meet this burden, but showed that in fact the sale was made at a place different from that covered by the injunction against appellant. The fact that Mrs. Grady Smith owned both of the adjoining tracts does not make them one and the same, and does not enlarge appellant's obligations under the decree. The precise boundaries and point of separation between the two lots is not clearly shown in the evidence, but the record does reflect that they are separate tracts, for the purpose of locating the property concerning which appellant was enjoined in the final decree. Hence, although appellant, on this record, was guilty of violating the liquor laws, he was not guilty of violating the final decree of May 14, 1952, and his conviction for violating that decree must therefore be reversed and the appellant discharged.

Reversed and appellant discharged.

*Roberds, P. J.,* and *Lee, Arrington* and *Gillespie, JJ.,* concur.