IN RE HIGGINS.

(Division B. June 7, 1943. Suggestion of Error Overruled June 25, 1943.)

[13 So. (2d) 829. No. 35403.]

H. C. **Stringer**, of Jackson, for appellant.

**Ross R. Barnett, Harold Cox,** and **Robert Burns, Jr.,** all of Jackson, for appellee.

Argued orally by **H. C. Stringer**, for appellant, and by **Harold Cox** and **Ross R. Barnett**, for appellee.

**Griffith, J.,** delivered the opinion of the court.

Although the maintenance of a bar comprised only of members worthy to be entrusted with the varied responsibilities, which the active practice of the law imposes upon its ministers, is recognized as essential to the preservation of what we understand in this country to be good government, experience in the past has shown that the elimination of those who have proved themselves unworthy has been one of our most difficult tasks and one which the public has regarded, with some justification, as not having been well or fully performed.

Lawyers deal every day with problems which the frailties and imperfections of men have produced, and seeing these every day and knowing that the practicing lawyer is confronted with more temptations, as compared with other callings, to take by-paths which are not in accordance with right conduct, they are normally more inclined than the membership of any other profession to overlook, to make excuses for, and to forgive erring members of their fraternity.

Moreover, when a lawyer, or two or more, of the community can plainly see that one of their number has gotten out of all tolerable bounds, there is nevertheless the disinclination to move, growing out of the fear that it will be said that the movants are prompted either by personal ill will or by a desire to rid themselves of a competitor, when, as a matter of fact, a few unworthy

competitors will produce more legal business in a community than if there were none such therein.

Inasmuch as proceedings to disbar must be conducted by a formal legal procedure so as in all essential respects to conform to due process, it follows that the assistance of lawyers must be brought to bear in such proceedings, even if the lawyers themselves do not initiate it, and here again the average member of the bar shrinks from the task and approaches it as if it were not his business any more than anybody else's and ordinarily with no zeal or enthusiasm for its performance such as he would devote to cases for his own clients.

It was in view of the stated considerations and to confer upon members of the bar of the state a semi-official character in the investigation and presentation of charges of misconduct, and that this duty might be centered in and upon particular members of the bar, rather than that it should remain everybody's business and therefore in practical effect nobody's business, that the statute, Chapter 121, Laws 1932, creating the State Bar, as a unified organization of all lawyers in the state, contained provisions conferring upon the board of commissioners of the State Bar the authority and duty to "investigate and pass upon all complaints which shall be made concerning the professional conduct of any person who has been, or who may be hereafter admitted to the practice of law," subsection 2, Section 23, Chapter 121, Laws 1932; and that: "If there shall be lodged with the Board of Commissioners a complaint or charge that any member of the State Bar has been guilty of a violation of the rules of conduct promulgated by the Association, or otherwise guilty of conduct evincing unfitness for the practice of law, or if knowledge of such conduct shall otherwise come to the commissioners of the State Bar and it shall appear to them that there is reasonable ground for such complaint or charge, the Board shall take cognizance thereof and conduct an investigation relative thereto, said investigation to be carried on and conducted and the evidence heard as far as practical in the county

of the residence of the lawyer accused, and after due notice to him and full opportunity to be heard.

"If in the judgment of the Board proof has been made of substantial violation of the rules of conduct promulgated by the Association, or that the accused lawyer has been guilty of conduct evincing unfitness to practice law, the said Board shall have the power to institute such proceedings as they deem necessary in the Circuit or Chancery court of the county in which the accused resides.

"If in the opinion of the Board, suspension rather than disbarment, would .be adequate punishment, if the accused be found guilty on trial, it shall be their duty to so recommend to the court in the proceedings aforesaid.

"If the Board shall be of the opinion, after investigation as aforesaid of the conduct of any member of the Bar, that a reprimand is all that justice requires, and that such reprimand will be adequate to meet the situation as developed, it shall have the power to reprimand said lawyer either publicly or privately without the necessity of instituting court proceedings." Section 26, said chapter. And the statute further provides: "The Board of Commissioners shall in no case give notice of court action, without having previously and privately given the party whose interests are involved an opportunity to explain or make amends or to satisfy the Board that he is guilty of no wrong doing or that the complaint against him, or his delinquency, if any should be dealt with without court action." Section 28, said chapter.

Charges of professional misconduct had been lodged with the board of commissioners against the respondent Higgins, and the board met in September, 1942, to consider the charges. It was found, however, that respondent Higgins had not been given notice of this meeting and an opportunity to be heard, as required by the statute, and another meeting of the board was called for and held on December 15, 1942. At this meeting the respondent appeared and was heard. Upon the conclusion of the hearing the commissioners present unanimously adopted

a resolution directing that two attorneys therein named should institute either in the chancery or the circuit court of the county of respondent's residence a proceeding for the disbarment of respondent, in pursuance of which the attorneys so, named did file in the chancery court of the county on January 4, 1943, a petition or information for disbarment upon which the chancellor ordered a citation returnable on January 11, 1943. Respondent promptly answered the petition, but on February 9, 1943, he filed a motion to have the proceedings wholly dismissed on the ground that there was no quorum of the bar commissioners present at the meeting on December 15, 1942, when the disbarment proceedings were directed to be instituted. This motion was overruled; the cause was subsequently heard on the merits by the chancery court, and there was an order or decree rendered disbarring respondent.

The record shows that as a matter of fact there were only nine members of the board present on December 15, 1942, when the commission had a total membership of eighteen. Had there been as many as ten members present, we believe it is safe to assume that no appeal would have been taken in this case, for the burden of the argument of appellant has been directed to the aforestated fact and to the contention that the chancery court had no jurisdiction to proceed, rather than upon the merits of the case.

We will assume, for the purposes of this appeal, that there was no quorum present at the said meeting of the commissioners and that the action directed to be taken was without the authority of the board of commissioners as such, and will, therefore, approach the contention presented by the motion to dismiss as if the proceedings to disbar were instituted by attorneys of good standing at the bar on their own initiative, and as if the court had recognized them as such, rather than as those proceeding in the name and by the authority of the State Bar; and this presents at once the question whether the statutory method set up by Chapter 121, Laws 1932, is the exclu-

sive means by or through which an attorney may be disbarred in this state.

We have held in Ex parte Cashin, 128 Miss. 224, 90 So. 850, and In re Steen, 160 Miss. 874, 134 So. 67, in accordance with the authorities everywhere, that the power, and the duty in proper cases, of disbarment is inherent in the superior courts of the state; that it is a power implicit in the constitutional establishment of such courts that they shall have the authority to take such steps as will be necessary to their preservation and protection in the performance of those duties for which they were called into existence by the constitution itself, and that a dependable and trustworthy bar is one feature, perhaps above all others, necessary to the proper performance of those duties. Such a power is, therefore, not dependent upon any statute, and is exercisable in the absence of any statute whatsoever. All that may be said of such statutes is that they may reasonably regulate the exercise of the power—they may not withdraw it, or so encumber it as to make it ineffective either upon the merits or as a matter of reasonable promptitude.

Hence it is that the courts have generally considered statutes such as Chapter 121, Laws 1932, as prescribing a preferential method of procedure, one which the courts may and in most cases ought as a matter of discretion to require to be followed, but not one which is exclusive unless the statute expressly declares that the prescribed procedure is exclusive of all others, and our statute does not so declare; and if it did, there would still remain the question whether this can be constitutionally done. Let us suppose that the board of commissioners after repeated efforts could never get a quorum. This is a sufficient suggestion to repel the contention that the court is in the meantime without authority to proceed.

We approve what was said on this subject in State v. Peck, 88 Conn. 447, 91 Atl. 274, 278, L. R. A. 1915A, 663, 669, Ann. Cas. 1917B, 227, as follows: "It is quite apparent that neither the statute nor the rule, save as the latter comprehends most, if not all, practicable methods of pro-

cedure, undertakes to frame exclusive provisions. Each provides methods of procedure, but neither exclusive methods. The courts are, as they should be, left free to act as may in each case seem best in this matter of most important concern to them and to the administration of justice. They may of their own initiative, and without complaint, set on foot inquiries as to professional conduct and fitness, or they may in their discretion entertain a complaint received from any source within or without the profession. Statute and rule provide orderly methods of procedure possessing the advantage of uniformity, thoroughness, and the promise of efficiency. But the power of the courts is left unfettered to act as situations, as they may arise, may seem to require for efficient discipline of misconduct, and the purging of the bar from the taint of unfit membership. Such statutes as ours are not restrictive of the inherent powers which reside in courts to inquire into the conduct of their own officers, and to discipline them for misconduct. Bar Ass'n of Boston v. Greenhood, 168 Mass. 169, 183, 46 N. E. 568.''

The chancery court here had the authority to proceed to the hearing on the merits. We shall not discuss the details of the several charges made nor the proof in support thereof. Some of the charges, if standing alone, would not be sufficient to sustain an order of disbarment; but when all the charges preferred in this case are considered together and in the light of their rational relationship as a whole, we are of the opinion that they were sufficient and were supported by the preponderance of the credible evidence. The order, therefore, will be affirmed.

Affirmed.