BOARD OF REVIEW *et al. v.* WILLIAMS.

(In Banc. Sept. 27, 1943. Suggestion of Error Overruled Nov. 8, 1943.)

[15 So. (2d) 48. No. 35356.]

Greek L. Rice, Attorney General, Harry M. Bryan and Henry Edmonds, both of Jackson, for appellants, Mississippi Unemployment Compensation Commission and C. B. Cameron, Director.

**Greek L. Rice,** Attorney General, **Harry M. Bryan** and **Henry Edmonds,** for appellant, Board of Review.

624

Hathorn & Williams, of Poplarville, for appellee.

Argued orally by **Harry M. Bryan** and **Henry Edmonds**, for appellants.

**Roberds, J.,** delivered the opinion of the court.

Appellants are the Mississippi Unemployment Compensation Commission and the Board of Review thereof. They will be called the Commission and the Board in this opinion.

The Board by written petition herein, prayed for a decree of the chancery court (1) requiring G. H. Williams to produce before the Board at a hearing to be held at Picayune, Mississippi, the stock books and pay rolls of Williams Contracting Company, a corporation, showing the stockholders and employees of that corporation for the years 1937, 1938 and 1939, for inspection and evidence, if desired, in connection with a claim for compensation made by one Buford J. Dillard, or, in the alternative (2) requiring Williams to appear before that court and show cause why he should not produce said books and rolls. Williams was summoned to show cause. He answered. The chancellor held that he was not required to produce such books and rolls.

There were a number of intermediate pleas, but the cause was finally heard upon the original and amended petitions and answer thereto. No proof was taken.

The original petition recited that the Unemployment Compensation Law exists by virtue of Chapter 176, Laws 1936; Chapter 3, First Extraordinary Session of 1936; Chapter 147, Laws of 1938 and Chapter 295, Laws of 1940 of Mississippi, and that the Commission and the Board are charged with the administration thereof, including claims of persons for unemployment compensation and including hearings and appeals to the Board from decisions of the Referee; that the Commission and the Board have the power to administer oaths to witnesses, Section 11(j), and issue subpoenas for witnesses, Section 11(k), said Chapter 295 (Section 11(j) and (k), Chapter 147) and that Section 11(k) confers the right on the Commission and Board to petition the chancery court for remedial orders and decrees to aid them in performing their duties

and carrying out their powers, and that in this case the Board seeks such aid. The petition then sets out: "That at nine o'clock A. M. on June 17, 1940, the aforesaid Board of Review, duly and lawfully constituted and acting wholly within the scope of its statutory authority, held a hearing in the office of the Mississippi State Employment Service in the City of Picayune, Pearl River County, Mississippi, in the matter of an appeal by Buford J. Dillard from a decision of E. S. McIntyre, Appeals Referee in a pending appealed claim for benefits under said law, the said Appeals Referee having held adversely to the said Dillard with respect to certain wages claimed by said Dillard to have been earned by him in 1938 in the employ of G. H. Williams, then and now a resident citizen of Pearl River County, Mississippi."

The petition further states that Williams, in response to subpoena issued by the Board, appeared and testified at that hearing, and that during his examination he was requested to produce the above stock books and pay rolls but declined to do so; whereupon the Board issued a subpoena duces tecum to him to bring these before the Board for examination and use in the hearing, which he refused to do. The petition then prayed in the alternative as above set out.

The amended petition was, in all essential respects, the same as the original petition, except that following the above-quoted provision in the original, the amended petition added this phrase: "Said claimant having stated that he was uncertain as to who his employer was because of an alleged close connection between the said G. H. Williams, individually, and G. H. Williams Contracting Company, a corporation, of which the said G. H. Williams is president."

Williams, in his answer to the petitions, admitted Dillard had presented a claim as stated in the petitions, and that same had been denied by the Referee, and Dillard had appealed, and that Williams had declined to produce the books and rolls, and denied that Dillard "stated that

he was uncertain as to who his employer was because of an alleged close connection between G. H. Williams, individually, and the Williams Contracting Company, a corporation;'' admitted Dillard was an employee of Williams individually in the year 1938, and denied he was ever an employee of Williams Contracting Company. It asserted that Dillard was employed by Williams individually as a farm laborer and that farm laborers are expressly excluded from participating in the compensation fund, and that said stock books and payrolls were not pertinent or relevant or material to the issues then being considered by the Board.

Neither petition waived answer under oath. Williams' answer was sworn to by him on personal knowledge. The record contains neither the petition of Dillard nor the findings of the Referee denying his claim, nor the proof before the Referee. Passing upon that factual situation the chancellor said: ''I do not think the petition alleges sufficient facts to entitle petitioner to the relief sought in the petition, but should it be conceded that the petition alleges sufficient facts to entitle petitioner to the relief sought, all of these facts are denied by defendant under oath and no proof whatever was offered by petitioner to overcome the effect of the denials contained in the sworn answer.'' That conclusion cannot be controverted on this record. In other words, this record shows Dillard was an employee of Williams individually and was a farm laborer. The issue to be passed upon by the Board was whether Dillard was entitled to compensation as such employee. Farm laborers are not entitled to benefits under the Act. Section 19 (i) (5) (A) of said Chapter 147, and Section 19(i) (6) (A) of said Chapter 295. It is not seen how the stock books and pay rolls of Williams Contracting Company were pertinent or material to the issue being considered. As to the Contracting Company this appears to be an inquisitorial, or fishing, proceeding. Courts, in passing on such questions, cannot disregard the rights of third persons.

The law is well settled on the question. It is within the sound discretion of the court whether it will grant an order for the issuance of a subpoena duces tecum. Jones' Commentaries on Evidence, 2d Ed., Vol. 5, p. 4510, Sec. 2309; Dancel v. Goodyear Shoe Mach. Co. (C. C. Mass.), 128 F. 753; Tucker v. Peiler, 2 Cir., 297 F. 570, certiorari denied 265 U. S. 587, 44 S. Ct. 461, 68 L. Ed. 1193.

The order will not issue unless the books and papers are pertinent, relevant and material to the issues then being tried, and the application or petition must show these facts. 70 C. J., p. 50, Sec. 37; Dorris v. Morrisdale Coal Co., 215 Pa. 638, 64 A. 855; People v. Heintz, 167 Ill. App. 550; Dancel v. Goodyear Shoe Mach. Co., supra; Tucker v. Peiler, supra; 70 C. J., p. 52, Sec. 39; Stevens v. Locke, 156 Miss. 182, 125 So. 529, 533.

In 70 C. J., p. 52, Sec. 39, it is said that it must appear from the application that the books or papers of which production is asked are "relevant and material to the issues before the court."

In People v. Heintz, supra, it was said: "There is an entire absence of any showing in the record that the books, documents and papers designated in the subpoenas duces tecum, were in any wise pertinent or material to the issues involved in the proceedings supplemental to judgment. In the absence of such showing, a party failing to obey a subpoena duces tecum cannot be adjudged in contempt and punished therefor."

In Stevens v. Locke, supra, this court said "the relevancy of evidence should be made to appear in the petition or proof before it would be reversible error to refuse to issue the writ."

In Mississippi Chancery Practice by Griffith, Section 553, it is said: "The petition must state sufficient facts to show that the papers and books sought are material as evidence in the case and for what purpose and in what respect they are material so that the chancellor may protect the witness against an unnecessary or irrelevant production."

The courts have frequently said, "The writ will not be granted as a fishing expedition nor where the purpose is for more inquiry or to discover whether there is any evidence in them that will be useful to the applicant, or for a general inquisitorial examination." 70 C. J., p. 51, Sec. 37; Dorris v. Morrisdale Coal Co., supra; Jones' Commentaries on Evidence, supra, p. 4506, par. 2307.

It will be noted that this is not a proceeding by the Commission or the Board against Williams Contracting Company to determine whether that company is an employer covered by the Act, nor whether, if it is such an employer, it has failed to make contributions as required by the Act, nor is it alleged that Williams owns or controls the Contracting Company, or that either Williams or the Contracting Company is within the Act. The Contracting Company is not a party to this proceeding for any purpose.

It appears to be the contention of the Board and Commission that, under said subdivisions (j) and (k), they have the exclusive power to issue writs of duces tecum and that the only function of the court is to force production if the Board and Commission determine such production should be had; that the machinery of the court is merely ministerial in carrying out their wishes, and the court has no discretion in the matter. Aside from whether the legislature would have the power to thus wipe out the constitutional right of persons against unlawful search and seizure, sacred under our form of government, the statutes invoked do not support the contention. Under subsection (k) the witness shall "produce evidence if so ordered" by the court, and "any person who shall without just cause" fail or refuse to produce the books, may be punished. These words necessarily mean the court has a discretionary alternative. In addition to this, the Board itself invoked the jurisdiction of the court and prayed for an order for production, or that Williams be cited to appear and show cause why he should not do so.

It is the further contention of appellants, as we under-

stand, that Williams should have brought the books and records into court and then let the question of their competency or relevancy be determined. That procedure might have support, although we do not decide the question, if the court had previously ordered the issuance and the clerk had issued the writ and it had been served upon Williams. But here the petition asked for an order to produce, or that Williams show cause. But actually bringing the books and records into court would have made no difference in this case. No matter what they showed they could not have been relevant under the established facts in this record. This record shows Dillard was employed by Williams individually and was a farm laborer. If he was a farm laborer he was not entitled to benefits. The questions were open to proof before the chancellor. Dillard certainly knew, or should have known, by whom he was employed, and whether he was a farm laborer. No testimony was offered. The Referee had already found against him on his own testimony. Evidence of the stockholders and employees of the Contracting Company was entirely irrelevant.

The Board relies mainly on the case of Endicott Johnson Corporation v. Perkins, Secretary of Labor, 317 U. S. 501, 63 S. Ct. 339, 341, 87 L. Ed. 424, decided January 11, 1943. That proceeding involved the validity of a subpoena issued by the Secretary of Labor in an administrative proceeding under the Walsh-Healey Public Contracts Act, 49 Stat. 2036, 41 U. S. C. A., secs. 35-45. That Act required, among other things, that in all contracts with the government for manufacture or furnishing of materials or articles to the government, in excess of $10,000, the individual contractor would carry out such maximum hours of work and minimum wages, including overtime, as might be promulgated by the Secretary of Labor covering such contract. Endicott Johnson obtained a number of contracts for the manufacture or supply of boots, shoes, gymnasium and arctic shoes, each contract containing representations and stipulations in accordance

with the Act and the Secretary's rulings thereunder, and bids for and awards of the contracts designated the places of manufacture, and manufacture elsewhere was forbidden. These designated submanufacturing plants were owned and managed by Endicott Johnson. At such plants, after the letting of the contracts, notices required by the contracts were posted, by which, according to statement of the court in this case, "petitioner admitted an obligation and apparently intended to comply with the Act and contract." In addition, the Secretary of Labor had promulgated a general, public regulation, as provided by the Act, that contractors should include any "integrated establishment," or department, which might manufacture any part which went into the completed article. The subpoena in question directed against Endicott Johnson and its secretary called for records chiefly relating to pay rolls in these subsidiary plants, compliance with which was refused. The Secretary of Labor then petitioned the United States District Court for aid in enforcing compliance, as the Act provided. In this petition she stated that "following an investigation by representatives of the Department of Labor, and it having appeared to the plaintiff upon the basis of such investigation that defendant" had violated the statute and the regulations, and "plaintiff has reason to believe . . . that the persons employed" in such subsidiary plants had been underpaid. The District Court denied the petition of the Secretary of Labor, D. C., 40 F. Supp. 254, but the Circuit Court of Appeals, 2 Cir., 128 F. (2d) 208, and the Supreme Court of the United States, 317 U. S. 501, 63 S. Ct. 339, 343, 87 L. Ed. 424, by a divided court, sustained it. The vital distinctions between that case and the one under consideration are immediately seen. In that case the persons having the records were parties to the contract; had agreed to comply with the law and the regulations, and the petition alleged noncompliance based upon investigation by representatives of the Department of Labor. The court made mention of these things. It also

made the significant observation that the Secretary had no power to make findings "except as incident to trial of the issue of violation," and the further statement "Thus the payrolls are clearly related to the violation." In other words, the court recognized that the production can only be forced when the books are relevant and material to issues then being tried, and that the petition must show such relevancy and materiality.

We think the chancellor was correct in not requiring production of the stock books and pay rolls. This, of course, does not involve, or in any way detract from, the power of the Commission or the Board in the administration of their duties to issue subpoenas for witnesses and documents and compel compliance, in accordance with provisions of the Act, in proper cases.

The second question arose out of this situation: The original petition herein was filed alone by the Board. Williams demurred to this petition and on September 28, 1940, the chancellor sustained the demurrer and allowed sixty days within which the Board might amend its petition. On September 30th the Commission issued a subpoena duces tecum to Williams to produce the same books and rolls, returnable October 11, 1940, before the Commission at Jackson. On October 8th Williams filed a petition in this cause, setting out the proceedings to that time, and the fact that no amendment had been made to the petition, and praying for a remedial writ restraining the enforcement of the duces tecum writ which had been issued by the Commission until the issues involved herein could be determined. The chancellor so ordered and the restraining writ issued. The amended petition was filed November 25th. The Commission, which files a separate brief herein, says it was not a party to this proceeding and that such restraining order as to its action should not have been granted. We think the Commission is so connected, under the Act and also the facts of this case, as that the restraining order could issue against it in this cause, as a matter of proper procedure. Under

the Act the Commission appoints the three members of the Board of Review, and designates one as its chairman. Sec. 10(f). It is the duty of the Commission to administer the Act, and it has power to promulgate and adopt rules and regulations governing the administration and enforcement of the Act. The Board of Review is an instrumentality in aid of the enforcement of the Act by the Commission. In addition to this, the petition filed by the Board of Review states that when Williams was testifying on the hearing of Dillard's petition that "he (Williams) was interrogated by the Chief Claims Examiner of the Mississippi Unemployment Compensation Commission and the Chairman and members of the said Board of Review . . ." It is, therefore, seen that the Commission actually took part in the hearing of this matter upon its merits. By sustaining the demurrer to the original petition on September 28th the Chancellor had adjudicated that the petition did not state grounds for requiring compliance with the subpoena duces tecum issued by the Board. Two days later, and before any amendment was made to the petition, and when the Commission was charged with knowledge, by participating in the proceedings, of such adjudication, it issued a subpoena to the same witness to produce the identical documents before it at a different time and place for use upon the same issues. It could not thus side-step, or by-pass, the decree of the court. It is not in position to complain that it was restrained under these circumstances.

The final restraining writ is not in the record. We do not know the exact wording or effect thereof.

But we construe the decrees and orders of the court and the temporary writ appearing in the record, all considered together, to deny the right in the Commission and Board to require, and to restrain them from taking further steps to enforce, production of said books and rolls, under the issues made by the pleadings in this cause, and the facts, circumstances and adjudications shown by and involved in this record. Affirmed.

## Dissenting Opinion.

**Smith, C. J.**, delivered a dissenting opinion.

There is more involved in the question here under consideration than appears on the surface, for the statute here controlling, as now construed, will adversely affect not only the procedural authority of this Board of Review when dealing with a recalcitrant witness, but will also furnish objecting employers with a weapon to prevent the Mississippi Unemployment Compensation Commission from discharging its statutory duties with efficiency and dispatch. The court below was not here acting on its general power as a court of chancery, and was without authority to have so done for its power to coerce a witness into the giving of testimony before this Board of Review is conferred and measured by paragraph (k) of section 9 of Chap. 147, Laws 1938, which the reporter will set out.[1] The power conferred by that paragraph of the

---

[1] "(k) Subpenas. In case of contumacy by, or refusal to obey a subpena issued to, any person, any court of this state within the jurisdiction of which the inquiry is carried on or within the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides or transacts business, upon application by the commission, the board of review, any referee, or any duly authorized representative of any of them shall have jurisdiction to issue to such person an order requiring such person to appear before the commission, the board of review, any referee or any duly authorized representative of any of them, there to produce evidence if so ordered or there to give testimony touching the matter under investigation or in question; any failure to obey such order of the court may be punished by said court as a contempt thereof. Any person who shall without just cause fail or refuse to attend and testify or to answer any lawful inquiry or to produce books, papers, correspondence, memoranda, and other records, if it is in his power so to do, in obedience to a subpena of the commission, the board of review, any referee, or any duly authorized representative of any of them, shall be punished by a fine of not more than $200 or by imprisonment for not longer than sixty days, or by both such fine and imprisonment, and each day such violation continues shall be deemed to be a separate offense."

section is not upon a particular named court, but upon "any court," which includes that of a justice of the peace, and the court below was without authority to exercise any power here which a justice of the peace could not have exercised had resort been here had to his court; and the rule of the chancery court as to the effect of a sworn answer to a bill of complaint does not apply here. Neither do the rules governing courts of justice when issuing subpoenas duces tecum at the request of a party to a litigation for the production of books, etc., in the possession of the one to whom the subpoena runs, for inspection by the party requesting the subpoena, and introduction by him in evidence on the trial of the case, should he so desire, apply here for the authority and procedure for the issuance, and the effect, of the subpoena duces tecum here issued, is governed by the statute hereinbefore cited.

The appellant, by the decision just rendered, has been permitted to justify his refusal to submit the books of his corporation to this Board of Review for its inspection and use, if found by it to be relevant to the matter it then had under consideration, on the ground that the contents of the books are not relevant to the matter the Board had before it. The relevancy and competency vel non of evidence, oral or documentary, in a case on trial, is never for the determination of the witness from whom the evidence is sought to be elicited, but is always for the determination of the trial court, which this Board of Review here was, subject to review by another court, if a proceeding is authorized by law therefor. This elementary rule applies to all evidence and governs here under Chaplain v. Briscoe, 5 Smedes & M. 198. The court there said, "It is the duty of the witness to obey the subpoena and bring the document with him; and it is a question of law for the court whether, upon principles of justice and equity, the production of the instrument ought to be enforced. . . . On this principle, Grissom (the witness) was bound to obey the subpoena, and after inspection of the paper it was for the court to say, whether it

should go in evidence. There is no rule of law which authorizes parties to judge for themselves in advance, whether a document is introductable or not.'' Not only is this general rule applicable to all courts, but in my judgment is the clear meaning of paragraph (k) of this statute, any possible doubt thereof being removed by paragraph (l) thereof. The only power and duty committed to the courts by paragraph (k) of the statute, in this connection, is to direct a recalcitrant witness to produce, if he can, the evidence desired of him and to punish him as for contempt in event he declines to do so. Whether the evidence sought was relevant and competent to the matter under consideration by it was for the determination of the Board of Review, subject, as hereinbefore set out, to judicial review in a proper proceeding therefor. The words, ''without just cause,'' in the concluding sentence of paragraph (k) of this section of the statute, whatever they mean, apply, not in a proceeding before a court for an order directing a witness to comply with a subpoena duces tecum, but in a criminal prosecution for refusal to obey the subpoena.

I express no opinion on the relevancy vel non of the contents of these books of account to the matter that the Board of Review had before it. Their contents were not revealed to the Board of Review, the court below, nor us; consequently, neither they nor we know what their contents are, and therefore they could not, and we cannot, determine their relevancy vel non here.

The court below should have ordered the appellant to obey the subpoena duces tecum.

There is another question, not presented by counsel, and not here decided, which interests me, and which I think I should state. That is, does an appeal lie from an order granted by a court under paragraph (k) of section 9, chapter 147, Laws 1938? Such an appeal is not granted by that statute, and if it lies, authority therefor must be found for the circuit and chancery courts, in section 13, and for a court of the justice of the peace in section

64, Code 1930. If such an appeal lies, a proceeding by the Missisippi Unemployment Compensation Commission to force an objecting employer to comply with his duty under chapter 147, Laws 1938, may, because of appeals by such an employer from orders of a court to obey orders of the Commission to produce evidence desired by it, continue over such a long period of time as to practically deny justice to a complaining employee.