296 So.2d 701 (1974)
In re Disbarment of John P. FOX.
No. 47972.
Supreme Court of Mississippi.
May 13, 1974.
Rehearing Denied June 4, 1974.
Frank T. Williams, Satterfield, Shell, Williams & Buford, Jackson, L.G. Fant Jr., Fant, Crutcher, Moore & Spencer, Holly Springs, for appellant.
Lester F. Sumners, New Albany, Armis E. Hawkins, James S. Gore, James M. Hood, Jr., Houston, Walter M. O'Barr, John D. Sibley, Kenneth Coleman, Okolona, for appellee.
ROBERTSON, Justice:
On September 2, 1972, six members of the local bar, all in good standing, filed a petition for disbarment against John P. Fox in the Circuit Court of Chickasaw County. Fox was charged with unethical and dishonest conduct arising principally from his handling of collections and stock purchases for his client, David Kouba, while Kouba was a commercial pilot in Laos.
The circuit court sustained a motion for a subpoena duces tecum, and ordered the Bank of Houston to produce all of its records of deposits in, and withdrawals from, the John P. Fox Trust Account from June 1st, 1969, through May 25, 1971.
*702 On October 11, 1972, the Mississippi State Bar petitioned for leave to "Join the Petition to Disbar John P. Fox". The court granted the petition and authorized Honorable Lester F. Sumners of the New Albany bar and Honorable James Hugh Ray of the Tupelo bar to represent the State Bar Association in this matter.
Fox was represented at all hearings by Honorable L.G. Fant, Jr., of the Holly Springs bar and Honorable Frank T. Williams, of the Jackson bar.
This Court commends counsel for both sides for their very able and competent representation of their clients and the great help they have been to this Court in a most difficult matter.
After a great deal of legal skirmishing and numerous hearings on preliminary motions even including a hearing before the United States District Court for the Northern District of Mississippi, and the Circuit Court of Appeals, Fifth Circuit, New Orleans Louisiana, and after an amendment to the Petition for Disbarment, the hearing of the case on its merits was finally begun on February 15, 1973, and factual testimony was taken through February 21, 1973. The record of the hearing is composed of 1498 pages of testimony in seven bound volumes and nine bound volumes of exhibits.
After this long and protracted hearing, the court on May 30, 1973, found Fox guilty of "improper, unethical and dishonest acts, and a deceitful and dishonest course of conduct" and disbarred him from practicing law, revoked his license and ordered his name stricken from the rolls as a licensed practicing lawyer in the courts of this State.
Fox assigns as error and argues these points in his brief:
1. The proceeding below was void under the Constitution of the United States and the law of the State of Mississippi;
2. Lawyers practice law by right;
3. The subpoena duces tecum was illegal;
4. The judge should have recused himself;
5. The intervention of the Mississippi State Bar was illegal and prejudicial;
6. Disbarment was unwarranted and extreme.
In 1932 the Mississippi Legislature recognized the inherent right of the courts to discipline members of the bar, who by virtue of their oath and office are officers of the court and, therefore, vitally interested in the proper and efficient administration of justice through the courts. (Chapter 121, Laws of 1932). Mississippi Code Annotated section 73-3-155 (1972) a part of the original act of 1932 provides:
"In all disbarment and/or reinstatement proceedings in the chancery or circuit court, a record shall be made of all testimony, evidence and other proofs taken in such proceedings, and upon appeals in such proceedings from the chancery and/or circuit court to the supreme court, the record shall be made up and filed with the supreme court as in other cases. The supreme court shall consider the evidence in the case, as disclosed by the record, and such other evidence as it may deem necessary for the administration of justice, and shall decide all questions of law and fact and render final judgment as to the disbarment, suspension, and/or reinstatement, as the case may be. The rule that the supreme court will not reverse the judgment of the lower court on a question of fact unless it affirmatively appears upon the face of the record that the cause was decided contrary to the evidence shall not apply in cases arising under this article, but the supreme court shall be the final judge of the facts, and the judgment to be rendered thereon." (Emphasis added).
This Court stressed its inherent right and recognized its solemn duty and responsibility *703 as the final judge of the law and the facts and the judgment to be rendered in Mississippi State Bar Association v. Wade, 250 Miss. 625, 167 So.2d 648 (1964); In Re Denman, 224 Miss. 92, 79 So.2d 536 (1955); In Re Quinn's Disbarment, 223 Miss. 660, 78 So.2d 883 (1955); In Re Poole, 222 Miss. 678, 76 So.2d 850 (1955); In Re Higgins, 194 Miss. 838, 13 So.2d 829 (1943).
Back in 1922, this Court in Ex Parte Cashin, 128 Miss. 224, 90 So. 850, said:
"It is a proceeding sui generis, on account of the relation of the attorney to the court; that is, he being an officer of the court, the judicial power lies with the court to proceed, for its own protection, to disbar upon a proper showing made, provided always that the attorney shall have reasonable notice of the charge in order that he may appear and defend, and so that the proceeding will be without oppression or injustice. The court already having jurisdiction of its attorneys, its officers, the citation by the judge was reasonable and sufficient notice to obtain jurisdiction to try appellant and disbar him.
......
"The court has the power to protect itself against an unfit attorney, an officer of the court, and may hear the charges in order to purge the roll of his name, upon reasonable notice given of the time of the hearing of the charges presented for disbarment, thus affording an opportunity to be heard. The exercise of the power of the court in hearing and determining whether the attorney shall be disbarred is not in contravention of the constitutional right of trial by jury. It is an exercise of judicial power in the regulation of the court's own officers, and to protect and preserve a clean and proper functioning of the tribunal." 128 Miss. at 232-234, 90 So. at 851, 852. (Emphasis added).
Again in 1943 in Re Higgins, 194 Miss. 838, 13 So.2d 829, this Court in positive and unmistakeable terms asserted its inherent jurisdiction over members of the legal profession as its own officers when it said:
"We will assume, for the purposes of this appeal, that there was no quorum present at the said meeting of the commissioners and that the action directed to be taken was without the authority of the board of commissioners as such, and will, therefore, approach the contention presented by the motion to dismiss as if the proceedings to disbar were instituted by attorneys of good standing at the bar on their own initiative, and as if the court had recognized them as such, rather than as those proceeding in the name and by the authority of the State Bar; and this presents at once the question whether the statutory method set up by Chapter 121, Laws 1932, is the exclusive means by or through which an attorney may be disbarred in this state.
"We have held in Ex parte Cashin, 128 Miss. 224, 90 So. 850, and In re Steen, 160 Miss. 874, 134 So. 67, in accordance with the authorities everywhere, that the power, and the duty in proper cases, of disbarment is inherent in the superior courts of the state; that it is a power implicit in the constitutional establishment of such courts that they shall have the authority to take such steps as will be necessary to their preservation and protection in the performance of those duties for which they were called into existence by the constitution itself, and that a dependable and trustworthy bar is one feature, perhaps above all others, necessary to the proper performance of those duties. Such a power is, therefore, not dependent upon any statute, and is exercisable in the absence of any statute whatsoever. All that may be said of such statutes is that they may reasonably regulate the exercise of the power  they may not withdraw it, or so encumber it as to make it ineffective either upon the merits or as a matter of reasonable promptitude.

*704 "Hence it is that the courts have generally considered statutes such as Chapter 121, Laws 1932, as prescribing a preferential method of procedure, one which the courts may and in most cases ought as a matter of discretion to require to be followed, but not one which is exclusive unless the statute expressly declares that the prescribed procedure is exclusive of all others, and our statute does not so declare; and if it did, there would still remain the question whether this can be constitutionally done. Let us suppose that the board of commissioners after repeated efforts could never get a quorum. This is a sufficient suggestion to repel the contention that the court is in the meantime without authority to proceed.
"We approve what was said on this subject in State v. Peck, 88 Conn. 447, 91 A. 274, 278, L.R.A. 1915A, 663, 669, Ann.Cas. 1917B, 227, as follows: `It is quite apparent that neither the statute nor the rule, save as the latter comprehends most, if not all, practicable methods of procedure, undertakes to frame exclusive provisions. Each provides methods of procedure, but neither exclusive methods. The courts are, as they should be, left free to act as may in each case seem best in this matter of most important concern to them and to the administration of justice. They may of their own initiative, and without complaint, set on foot inquiries as to professional conduct and fitness, nor they may in their discretion entertain a complaint received from any source within or without the profession. Statute and rule provide orderly methods of procedure possessing the advantage of uniformity, thoroughness, and the promise of efficiency. But the power of the courts is left unfettered to act as situations, as they may arise, may seem to require for efficient discipline of misconduct, and the purging of the bar from the taint of unfit membership. Such statutes as ours are not restrictive of the inherent powers which reside in courts to inquire into the conduct of their own officers, and to discipline them for misconduct. Bar Ass'n of Boston v. Greenhood, 168 Mass. 179, 183, 46 N.E. 568.'
"The chancery court here had the authority to proceed to the hearing on the merits." 194 Miss. at 843-845, 13 So.2d at 831-832. (Emphasis added).
We can not over-emphasize the great and fundamental duties and responsibilities that devolve upon all attorneys licensed by the courts to practice law. In Poole, 222 Miss. 678, 76 So.2d 850 (1955), this Court said:
"The attorney occupies a unique place in our society; he has great opportunity for useful and honorable service, with an equally great responsibility to maintain the highest standard of professional conduct; he is entrusted with the problems, money, and property of all manner of people, the ignorant and helpless, the rich and the poor; he has many privileges and possesses power not accorded others; the responsibility of administering justice is largely in his hands; his conduct involves the integrity of the courts of which he is an officer, and the good name of the legal profession; and the very essence of his professional function is confidence and trust. One must possess good moral character to enter the practice of law; and to continue in the profession, this standard of moral character must be maintained. Inexperience, weakness, and personal hardship do not excuse conduct inconsistent with common honesty. The practice of law is not a constitutional or natural right, but a revocable privilege. When the conduct of an attorney becomes such that it tends to bring in disrepute the courts and the legal profession and jeopardizes the rights of those who entrust their affairs and money into his hands, he should be disbarred. Such action is necessary for the protection of the public, the courts, and the legal profession. Punishment of such attorney is not the purpose sought *705 to be accomplished by his disbarment." 222 Miss. at 686, 76 So.2d at 853. (Emphasis added).
This Court (all nine Justices sitting en banc) has carefully studied, discussed and considered this voluminous record and all exhibits. We are satisfied that appellant Fox has received due process both in the circuit court and in this Court.
We do feel, however, that in view of the fact that his troubles began in his course of dealing with David Kouba while he was overseas, and apparently ended when he made Kouba whole financially, and in view of appellant's age, abilities, past good reputation and promise for the future, that he deserves a second chance to prove himself as an honorable and trustworthy attorney.
It is, therefore, the opinion of this Court that the appellant's conduct was not such that he should suffer permanent disbarment but that he should be suspended from the practice of law in all courts of this State for a period of four months, the period of suspension to begin 30 days after the mandate of this Court goes down to the lower court.
It is so ordered that appellant be suspended from the practice of law for four months.
GILLESPIE, C.J., and INZER, SMITH and WALKER, JJ., concur.
RODGERS, P.J., and BROOM, PATTERSON and SUGG, JJ., dissent.
RODGERS, Presiding Justice (dissenting).
I am constrained to respectfully disagree with my astute colleagues in the result reached by the majority in this case. I submit that we have no jurisdiction of this case, and if we could have accepted jurisdiction on appeal, by any stretch of the imagination, there are other serious reversible errors shown in the record, one of which will be discussed later.
There is no issue as to the fact that the defendant was tried by a group of lawyers before a judge in vacation, and on one occasion even out of the county of his residence. I agree that a circuit court has inherent jurisdiction to disbar a lawyer from practicing in that court, but I do not agree that a judge of the circuit court, this Court or any other court, has the authority to hear a proceeding not in term time and enter an order in vacation on any subject not specifically authorized by law, such as habeas corpus, supersedeas and authorized vacation decrees by a chancellor.
A judge is not a court. He is just a member of the court, albeit a material member.
One text writer has this to say on the subject:
"The words `judge' and `court' are frequently used as convertible terms, but they are not strictly synonymous, and a judge alone does not necessarily constitute a court, and has been described as merely an officer or member of the court, for, while the judge is an indispensable part, he is only a part of the court." 21 C.J.S. Courts § 1, at 16 (1940).
This state has established our circuit courts in the pattern and under the restrictions imposed on the assize circuit travelling court of England. There a court was "composed of an assembly of knights and other substantial men, with the baron or justice, in a certain place at an appointed time." Bouvier's Law Dictionary First Edition, Assize, at 182, 183 (1897).
Judges of the assize and nisi prius circuits, sent out on the eight circuits, were judges of the superior courts of common law and given commission: of the peace; of oyer and terminer; of jail delivery; and of nisi prius. The courts were not only required to meet at a certain time and place, but sentences were not imposed until the fifth day after the trial in open court.
Section 1428, Mississippi Code 1942 Annotated (1956) [now Mississippi Code Annotated *706 § 9-7-81 (1972)] gives the circuit court power to hear and determine all prosecutions except such as may be exclusively cognizable before some other court, "and said court shall have all the powers belonging to a court of oyer and terminer and general jail delivery, and may do and perform all other acts properly pertaining to a circuit court of law."
Section 147, Mississippi Constitution 1890 recognizes the difference between equity courts and courts of the common law of this state.
If we assume [as we must have so done] that Section 8715, Mississippi Code 1942 Annotated (1956) [now Mississippi Code Annotated § 73-3-155 (1972)] is applicable in this case [in which certain lawyers filed the bill of complaint rather than the statutory procedure following the acts of the State Bar Commission], even this law requires a hearing before a court, as shown by the following quotation from the statute: "Provided, that in all disbarment and/or reinstatement proceedings in the chancery or circuit court, a record shall be made of all testimony, ..." (Emphasis added)
In the case of Walton v. State, 147 Miss. 851, 112 So. 790 (1927) we dealt with a legislative act, House Bill 363, Chapter 130, Laws of 1926, in which the Legislature attempted to make the terms of the circuit court for criminal business perpetual so as to keep the court open at all times. We pointed out, however, that Section 158, Mississippi Constitution 1890, required at least two (2) terms of court in each county. We held that in construing the law in effect at the time the Constitution was ordained and established, in the light of the common law, "that the court shall be held at stated times, ..." [147 Miss. at 863, 112 So. at 792]. We also said: "Perpetual terms of the court were not contemplated, neither were perpetual juries or professional jurors." [147 Miss. at 864, 112 So. at 792]. The only authority given to a circuit judge to try cases in vacation in this state is clearly set forth under Section 1523, Mississippi Code 1942 Annotated (1956) [now Mississippi Code Annotated § 11-7-133 (1972)], as follows:
"A judge of any circuit court may deliver opinions and render, make and sign judgments in vacation, as in term time, in cases taken under advisement by him at a term of the court; and by consent of the parties, or of their attorneys of record, he may try cases in vacation, as in term time, and make and enter judgments therein in vacation. All judgments and all orders which a judge of any such court may render or make in vacation, shall be signed by him and thereupon be entered and recorded on the minute book of the court in which the case or matter is pending, and shall have the same force and effect as if made, entered and recorded in term time, and appeals may be had and taken therefrom when so entered and recorded, and bills of exception may be taken and signed in such cases when so tried in vacation, as in other cases, in like manner as is provided by law when cases are tried in term time."
Cited under this section will be found the many cases holding that a circuit judge has no authority to try cases in vacation except those expressly authorized by law.
We have often held that a circuit judge could not enter a judgment in vacation unless authorized by statutory authority to so do. See Wilson v. Rodewald, 61 Miss. 228 (1883). See also the many cases cited in Hyde Construction Company v. Highway Material Company, 248 Miss. 564, 159 So.2d 170 (1963).
The appellees contend that the authority of the judge to act in this case is based upon the inherent power of the court to preserve the dignity of the court. This argument must fail because one of the greatest inherent powers of the court is to punish for contempt, and contempt proceedings cannot be heard in vacation. It has been said: "The power of courts of justice, whether of record or not, to punish for *707 contempt is an incident essential to the execution and maintenance of judicial authority." 12 Am.Jur. Contempt § 3, at 390 (1938). It is also said to be inherent in all courts of general jurisdiction. 12 Am.Jur. Contempt § 40, at 418 (1938).
Nevertheless, this Court has held that contempt proceedings could not be had in vacation. We said in Ex Parte Redmond, 156 Miss. 582, 126 So. 485 (1930) as follows:
"In so far as the decree of commitment to jail for contempt is concerned, entered in vacation, we have to say that the court was without power to hear this matter in vacation, and we shall not advert further to proceedings and decree in vacation. (Citing many cases)." 156 Miss. at 589, 126 So. at 486.
The writers of our Mississippi Constitution 1890 were careful to preserve our ancient right to be heard in open court. Section 24 is in the following language:
"All courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay."
Courts of Star-Chamber where "divers lords, spiritual and temporal, who were members of the privy council, together with two judges of the courts of common law" gathered together for the purpose of having a secret trial, have long since been abolished. One of the elements of due process is the right to be heard in open court by a fair and impartial judge.
The appellant was denied due process because he was not given his day in court.
If, however, there were a final judgment[1] from a court of law and we actually had jurisdiction of the case, the judgment should be reversed for several reasons. The first error occurred in the beginning of the trial.
The specifications filed against the appellant were not such as to authorize a general perusal of the appellant's bank account; nevertheless, a subpoena duces tecum was issued requiring the bank to bring in all the defendant's trustee records, and from these records a case was made against the defendant. The subpoena duces tecum was clearly a fishing expedition issued without probable cause. The writ covered private affairs not involved in the charge. We said in Board of Review v. Williams, 195 Miss. 618, 15 So.2d 48 (1943):
"The courts have frequently said, The writ will not be granted as a fishing expedition nor where the purpose is for more inquiry or to discover whether there is any evidence in them that will be useful to the applicant, or for a general inquisitorial examination.' 70 C.J. p. 51, Sec. 37; Dorris v. Morrisdale Coal Co., supra [215 Pa. 638, 64 A. 855]; Jones' Commentaries on Evidence, supra, p. 4506, par. 2307." 195 Miss. at 630, 15 So.2d at 51.
See also 58 Am.Jur. Witnesses § 25, at 36 (1948); Bowman Dairy Co. v. United states, 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879 (1951); the many cases cited Annot., 23 A.L.R.2d 867 (1952).
This Court, in speaking of the statutory authority to require the production of papers, had this to say:
"The power conferred should be exercised with great caution to avoid invasion of the rights of defendants. Such caution was not observed in this case. We will not undertake to define the state of case in which an order for inspection, etc., may be properly made. Each case must be determined by its own facts. Suffice it to say that the power conferred *708 by the act is a very delicate one, and should never be exercised except on good cause shown of the necessity for it to promote the ends of justice, and there the terms imposed should carefully safeguard the rights of the party against whom the order is made. To permit the decree in this case to stand would shock our sense of justice." (Emphasis added) Equitable Life Assur. Soc. of the United States v. Clark, 80 Miss. 471, 484-485, 31 So. 964 (1902).
The defendant Fox was entitled to a fair trial in a regular open court and was entitled to all the other rights given by law to any other citizen, and, in my judgment, he was not given due process. I would, therefore, reverse this case so that he could be tried in open court on proper evidence at a regular term.
PATTERSON, SUGG and BROOM, JJ., concur.
BROOM, Justice (dissenting):
While I agree with the statement in the majority opinion of the Court commending counsel for both sides on their able presentations in this cause, I am obliged to dissent as to the judgment rendered. It is my view that the purported record of evidence was made before the person of a judge, not a court, in vacation who had no authority in such a posture to hear the cause before him.
The majority opinion does not precisely address the critical question of whether or not a judge may without statutory authority try a disbarment in vacation. Mississippi Code Annotated section 73-3-155 (1972) is cited and the rationale of the opinion is that courts have the inherent right to discipline members of the bar. Section 73-3-155 permits and directs us to "render final judgment" in disbarment cases, but this same section says that this shall be done "upon appeals ... from the chancery and/or circuit court. ..." (Emphasis added). This presupposes that proceedings below in such litigation were conducted in a court. The statute should not apply to action conducted below merely before the person of a judge in vacation.
As case law authority, the majority opinion cites: In Re Poole, 222 Miss. 678, 76 So.2d 850 (1955); In Re Higgins, 194 Miss. 838, 13 So.2d 829 (1943); and Ex Parte Cashin, 128 Miss. 224, 90 So. 850 (1922). No case of this jurisdiction has ever ruled that disbarment matters may be tried in vacation. Cashin, which was tried in term time, says that disbarment is "sui generis" and not a "punishment proceeding." It also says that disbarment is a "summary" type power inherent "in the courts" (emphasis added), and makes the pronouncement that disbarment is "not the trial of an action or suit." More recently the rationale of these cases of this jurisdiction was in effect overruled. In Re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968); Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967). It is fair to say that since Ruffalo and Spevack, the articulations of Cashin are no longer the law, but that: (1) Disbarment is a "punishment or penalty imposed on the lawyer;" (2) a lawyer who is the subject of disbarment proceedings is entitled to "procedural due process;" (3) disbarment is adversary in nature; and (4) it is the trial of a suit or action. Spevack held that lawyers are to be treated as having "first-class citizenship" and accorded equal rights extended to others.
While considering the question of what powers are vested in a circuit judge to try disbarment matters and compile recorded testimony in vacation, one must be mindful that there is a vast difference between a judge and a court. My brethren who rendered the majority opinion herein failed to note this distinction and in so doing ignored the well established rule of this jurisdiction that both judges and/or courts when acting in vacation may act only within the limits of legislative authority. Also, the majority failed to apply the corollary *709 rule that actions taken by judges and/or courts absent statutory authority during vacation are absolutely void. It might be asserted that a judge may summarily strike from the roster of those who practice before him the name of a lawyer, but to disbar one generally is another matter.
Chalmers, J., speaking for this Court in Wilson v. Rodewald, 61 Miss. 228 (1883), at page 232, recognized the distinction between a judge and a court, and said:
[W]ithout some statute there can be no authority in a judge to pronounce a judgment in vacation. The rendition of a judgment is the highest of judicial acts, and belongs to a court, and not to the person of the judge. ... (Emphasis added).
This Court stated in Ex Parte Redmond, 156 Miss. 582, 126 So. 485 (1930) that a court is without power to try a lawyer in vacation on a charge of contempt. Every time this Court has been confronted with this question heretofore, we have ruled that judges have no more power in vacation than is specifically given them by statute. Hyde Constr. Co. v. Highway Materials Co., 248 Miss. 564, 159 So.2d 170 (1963); White v. State, 185 Miss. 307, 188 So. 8 (1939); Union Motor Car Co. v. Cartledge, 133 Miss. 318, 97 So. 801 (1923); and Gulf Coast Stevedoring Co. v. Gibbs, 124 Miss. 188, 86 So. 582 (1920). All of these cases support Wilson, supra, and Arbour v. Yazoo & M.V.R.R., 98 Miss. 714 at 717, 54 So. 158 (1910) which stated the rule "... it seems well settled that all proceedings (emphasis added) in a court, at a time when the holding of such court is unauthorized by law ... are void."
Since Ruffalo, supra, and Spevack, supra, were decided by the United States Supreme Court, no one can deny that criminals and private litigants are entitled to procedural due process. How can it be said that procedural due process, in matters involving the privilege of lawyers to practice law, does not include the right to trial in term time accorded citizens of other echelons or classes? Who would assert that a murderer could be legally convicted in vacation though it be upon adequate notice and in strict adherence to every rule that would be applicable in term time? Is a lawyer entitled to less solemnities or less judicial consideration than a murderer?
Historically the legislature has made laws fixing qualifications of judges, terms of office, establishing times or schedules when courts will be in session and providing what matters may be attended to when court is not in session during a fixed term. What this Court has done in (1) ignoring its prior decisions, that vacation powers of the person of a judge are no greater than granted by statute, and (2) in reading into Mississippi Code Annotated section 73-3-155, supra, the thesis that appeals from "chancery and/or circuit court" are the same as appeals from the person of a judge, amounts to judicial legislation.
The record before us is so lacking in evidence of viable and cognizable qualities that we are not confronted with anything upon which we can render judgment.
Jurisdiction is not present under such circumstances as here where the purported trial did not occur in a legally organized and constituted court, but took place in vacation before the person of a circuit judge. Absent jurisdiction, I take no part in the type sanction imposed against Fox except to say we have no authority other than to reverse and remand for appropriate trial.
RODGERS, P.J., and PATTERSON and SUGG, JJ., join in this dissent.
NOTES
[1] There must have been a final judgment in the trial court before the Supreme Court has jurisdiction on appeal. See Section 1945, Miss.Code 1942 Ann. (1956) [now Miss. Code Ann. § 9-3-9 (1972)].